TEXAS NATURAL RESOURCE CON-
SERVATION COMMISSION, Pe-
titioner,

v.

IT–DAVY, Respondent.

No. 99–1114.

Supreme Court of Texas.

Argued Sept. 5, 2001.

Decided April 11, 2002.

John Cornyn, Attorney General of the State of Texas, Howard G. Baldwin, First Assistant Attorney General, Julie Caruthers Parsley, Patrick J. Feeney, Linda Eads, William Rich Thompson, and Jeffrey S. Boyd, Austin, for Petitioner.

Bob E. Shannon, Kevin M. Sadler, Baker & Botts, Scott K. Field, York, Keller & Field, L.L.P., Austin, for Respondent.

JAMES A. BAKER, Justice.

The issue in this case is whether the sovereign-immunity doctrine bars IT–Davy, a general contractor, from suing the Texas Natural Resource Conservation Commission, a state agency, for claims arising from the TNRCC's alleged breach of contract. IT–Davy alleges that it fully performed under its contract with the TNRCC. Further, IT–Davy alleges that the TNRCC accepted the full performance but did not fully pay for the accepted services. The TNRCC filed a plea to the jurisdiction, arguing that sovereign immunity bars IT–Davy's claims. The trial court denied the jurisdictional plea. The court of appeals affirmed the trial court's order because it determined that IT–Davy's allegations were "sufficient to show that the [TNRCC] has engaged in conduct, beyond the mere execution of a contract, that waives its immunity from suit." 998 S.W.2d 898, 902. We disagree.

We conclude that the sovereign-immunity doctrine bars IT–Davy's suit. We also conclude that neither the TNRCC's conduct nor the express terms of the contract waived such immunity. Moreover, neither the Water Code nor the Declaratory Judgment Act waive the TNRCC's sovereign immunity from suit under the facts here. Accordingly, we reverse the court of appeals' judgment and dismiss IT–Davy's claims for want of jurisdiction.

## I. BACKGROUND

In 1990, the TNRCC's predecessor, the Texas Water Commission, accepted IT–Davy's bid to clean up the Sikes Disposal Pits, a hazardous waste site in Houston. The contract provides for "equitable adjustments" if "conditions materially differ and ... cause an increase or decrease in [IT–Davy's] cost or the time required to perform any part of the work...." Additionally, the contract's "remedies provision" states that all claims or disputes related to the agreement "will be decided by arbitration if the parties mutually agree to arbitration or otherwise in a court of competent jurisdiction in the City of Austin, Travis County, Texas."

The parties do not dispute that IT–Davy performed the clean-up or that the TNRCC paid IT–Davy the full contract price. However, IT–Davy claims it incurred additional expenses and lost profits because materially different site conditions increased its clean-up costs. Accordingly, IT–Davy requested equitable adjustments. After meetings and informal mediation, the TNRCC agreed to pay IT–Davy an additional $700,000 over the contract price. But IT–Davy, believing the TNRCC owes an additional $6,723,655 in extra costs and lost profits, sent a detailed letter to the TNRCC demanding more money. The TNRCC's executive director rejected IT–Davy's demand for additional equitable adjustments. The rejection letter states, in part:

We believe we have paid all amounts due not only under the original contract but also under the numerous contract amendments that we agreed to during the course of the cleanup.

If you feel the need to pursue additional remedies, we intend to participate in those with the same good faith we have demonstrated over the past several years. But we must decline your most recent demand for payment.

IT–Davy next sought to arbitrate the dispute under the contract's "remedies provision." But the TNRCC denied IT–Davy's request. Then, without obtaining legislative consent, IT–Davy sued the TNRCC in a Travis County district court. IT–Davy sought a declaration about its rights and the TNRCC's legal obligations under the contract. Also, IT–Davy sought damages for breach of contract, negligent misrepresentation, quantum meruit, and promissory estoppel.

The TNRCC filed a plea to the jurisdiction based on sovereign immunity. After a hearing, the trial court denied the plea. The TNRCC filed an interlocutory appeal. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8). The court of appeals determined that TNRCC waived immunity from suit by engaging in conduct "beyond the mere execution of a contract." 998 S.W.2d at 902. Specifically, the court of appeals concluded that IT–Davy's allegations—that IT–Davy fully performed under the contract, did additional work at the TNRCC's express request, and did not receive full payment from the TNRCC for this additional work—were sufficient to waive the TNRCC's immunity from suit. 998 S.W.2d at 902.

The TNRCC petitioned this Court to review the court of appeals' decision. While the TNRCC's petition was pending, we decided three related sovereign-immunity cases: *General Services Commission v. Little–Tex Insulation Co.*, consolidated with *Texas A & M University v. Dalmac Construction Co.*, 39 S.W.3d 591 (Tex. 2001); and *Texas Department of Transportation v. Aer–Aerotron, Inc.*, 39 S.W.3d 220 (Tex.2001). We then granted the TNRCC's petition to determine whether sovereign immunity bars IT–Davy's suit.

## II. JURISDICTION

■ The Texas Government Code generally makes jurisdiction over interlocutory appeals final in the courts of appeals. *See* Tex. Gov't Code § 22.225(b); *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex. 1998). However, this Court has jurisdiction over an interlocutory appeal when there is a dissent in the court of appeals, or the court of appeals "holds differently from a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case." Tex. Gov't Code § 22.001(a)(2); see also Tex. Gov't Code § 22.225(c); *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 867 (Tex.2001). Our conflicts jurisdiction exists only if "the rulings in the two cases are 'so far upon the same facts that the decision of one case is necessarily conclusive of the decision in the other.'" *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 551 (Tex.2000) (citations omitted). The test is whether one case would operate to overrule the other if the same court rendered both. *Coastal Corp.*, 979 S.W.2d at 319–20.

Here, there is no dissent in the court of appeals. Accordingly, we have jurisdiction only if we determine that the court of appeals held differently from a prior decision of another court of appeals or this Court. *See* Tex. Gov't Code §§ 22.001(a)(2), 22.225(c); *White*, 46 S.W.3d at 867.

■ We conclude that the court of appeals' decision conflicts with *Ho v. University of Texas at Arlington*, 984 S.W.2d 672 (Tex. App.-Amarillo 1998, pet. denied). In *Ho*, the University dismissed Ho from its doctoral program without granting her a degree. Ho brought various contract, tort, and constitutional claims against the University. In a summary-judgment motion, the University asserted that the sovereign-immunity doctrine barred Ho's claims. Relying on *Federal Sign* and a court-of-appeals decision, Ho asserted that she did not have to plead and prove legislative consent to suit because the University's conduct waived its immunity from suit. *Ho*, 984 S.W.2d at 682. The trial court granted the University's motion. On appeal, Ho relied on *Federal Sign* to argue that the University's conduct waived its immunity from suit and, consequently, she could sue the University without obtaining legislative consent. *Ho*, 984 S.W.2d at 682 (citing *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 n. 1 (Tex.1997)). The court of appeals rejected her argument:

> We disagree with Ho's premise. By stating that it is "the Legislature's sole province to waive or abrogate sovereign immunity," the majority opinion in *Federal Sign* clearly reaffirmed a long line of cases standing for that general principle. . . .
>
> [T]he *only exception* we have found in which the State, by its own actions waives immunity, is that which applies when the State initiates a suit. . . . Therefore, inasmuch as Ho was unable to plead and prove she had the State's consent to bring this suit, she has not complied with that procedural requirement and the trial court correctly granted summary judgment dismissing Ho's contract claims.

*Ho*, 984 S.W.2d at 682–83 (citations omitted) (emphasis added). Because *Ho* re-

jects any waiver-by-conduct exception to sovereign immunity when a private party sues the State, the court of appeals' decision here would operate to overrule *Ho* if the same court of appeals had rendered the decision. *See Coastal Corp.*, 979 S.W.2d at 319–20. Therefore, we have jurisdiction to consider this interlocutory appeal. *See* TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(c); *White*, 46 S.W.3d at 867.

## III. APPLICABLE LAW

### A. THE SOVEREIGN-IMMUNITY DOCTRINE AND THE STANDARD OF REVIEW

■ Sovereign immunity protects the State from lawsuits for money damages. *Little–Tex*, 39 S.W.3d at 594. Sovereign immunity encompasses two principles: immunity from suit and immunity from liability. *Little–Tex*, 39 S.W.3d at 594. Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit. *Little–Tex*, 39 S.W.3d at 594. If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed. *Federal Sign*, 951 S.W.2d at 405. Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue. *Little–Tex*, 39 S.W.3d at 594.

■ This Court has long recognized that "it is the Legislature's sole province to waive or abrogate sovereign immunity." *Federal Sign*, 951 S.W.2d at 409; *see also Duhart v. State*, 610 S.W.2d 740, 741 (Tex. 1980); *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813–14 (Tex.1970); *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 840 (1958); *Texas Highway Dept. v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 71 (1949); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). The Legislature may con-

sent to suits against the State by statute or by resolution. *Little–Tex*, 39 S.W.3d at 594. Legislative consent to sue the State must be expressed in "clear and unambiguous language." TEX. GOV'T CODE § 311.034; *University of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex.1994).

We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function. *Hosner*, 1 Tex. at 769; *see also* Cunningham & Pearce, *Contracting with the State: The Daring Five—The Achilles' Heel of Sovereign Immunity?*, 31 ST. MARY'S L.J. 255, 258 n. 15, 259 n. 16 (1999); Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 VAND. L.REV. 1529, 1535 (1992). Indeed, in the Code Construction Act, the Legislature expressed its desire to maintain control over sovereign immunity "[i]n order to preserve [its] interest in managing state fiscal matters through the appropriations process...." *See* TEX. GOV'T CODE § 311.034. Subjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments. *See* Krent, 45 VAND. L.REV. at 1537 n. 23. Accordingly, the Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear. *Federal Sign*, 951 S.W.2d at 414 (Hecht, J., concurring); *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.1993).

In the contract-claims context, legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public. *Federal Sign*, 951 S.W.2d at 414

(Hecht, J., concurring). Moreover, legislative control ensures that current policymakers are neither bound by, nor held accountable for, policies underlying their predecessors' long-term contracts. *See* Krent, 45 VAND. L.REV. at 1538. But legislative control over waiving immunity from suit does not mean that the State can freely breach contracts with private parties, or that the State can use sovereign immunity as a shield to avoid paying for benefits the State accepts under a contract. Rather, if a party who contracts with the State feels aggrieved, it can seek redress by asking the Legislature to waive immunity from suit. *See* TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005.

When the State contracts with a private party, it waives immunity from liability. *Little–Tex*, 39 S.W.3d at 594. But the State does not waive immunity from *suit* simply by contracting with a private party. *Little–Tex*, 39 S.W.3d at 594. Until recently, if the Legislature had not expressly waived sovereign immunity from suit by statute, a private party could sue the State for breach of contract only if it obtained a legislative resolution. *See* TEX. CIV. PRAC. & REM.CODE § 107.001. In 1999, the Legislature enacted an administrative process to resolve breach-of-contract claims against the State. Act of May 30, 1999, 76th Leg., R.S., ch. 1352, 1999 Tex. Gen. Laws 4578 (codified at TEX. GOV'T CODE §§ 2260.001–.108). However, chapter 2260 does not apply to contracts "executed or awarded on or before August 30, 1999." TEX. GOV'T CODE § 2260.002(2). And, although chapter 2260 provides an administrative remedy, it does not waive the State's sovereign immunity from suit in breach-of-contract cases. TEX. GOV'T CODE § 2260.006; *Little–Tex*, 39 S.W.3d at 595.

■ A plaintiff who sues the State must establish the State's consent to suit. *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Otherwise, sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Jones,* 8 S.W.3d at 638. The State may assert sovereign immunity from suit in a plea to the jurisdiction. *Jones,* 8 S.W.3d at 638. Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). Accordingly, we review a trial court's order denying a jurisdictional plea based on sovereign immunity *de novo. See Mayhew,* 964 S.W.2d at 928.

### B. THE TEXAS WATER CODE

The Texas Water Code authorizes the TNRCC's executive director to negotiate and, with the TNRCC's consent, enter into contracts "for the purpose of carrying out the powers, duties, and responsibilities of the commission." TEX. WATER CODE § 5.229(b). The Water Code also allows "[a] person affected by a ruling, order, decision, or other act of the commission" to petition a Travis County trial court "to review, set aside, modify, or suspend the act of the commission." TEX. WATER CODE §§ 5.351(a), 5.354. Moreover, a person affected by agency inaction can "file a petition to compel the commission or the executive director to show cause why it should not be directed by the court to take immediate action." TEX. WATER CODE § 5.352.

### C. THE DECLARATORY JUDGMENT ACT

■ The Uniform Declaratory Judgment Act (DJA) is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE § 37.002(b). The Act provides:

A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM.CODE § 37.004(a). The DJA does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994).

■ Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *See, e.g., Texas Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law); *Dodgen,* 308 S.W.2d at 838 (suit against state official for wrongfully imposing a statutory tax burden). But such suits are not "suits against the State." *Dodgen,* 308 S.W.2d at 840 (citing the rule announced in *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945)). This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability. *Griffin,* 341 S.W.2d at 152. Therefore, certain declaratory-judgment actions against state officials do not implicate the sovereign-immunity doctrine. *See Cobb,* 190 S.W.2d at 712.

■ In contrast, declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. *Dodgen,* 308 S.W.2d at 840

(citing *Herring v. Houston Nat'l Exch. Bank*, 113 Tex. 264, 253 S.W. 813, 814 (1923)). That is because such suits attempt to control state action by imposing liability on the State. *See Griffin*, 341 S.W.2d at 152. Consequently, such suits cannot be maintained without legislative permission. *See Federal Sign*, 951 S.W.2d at 404. And, private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim. *See Dodgen*, 308 S.W.2d at 842.

## IV. ANALYSIS

The TNRCC argues that, as a State agency, it enjoys immunity from IT–Davy's suit absent legislative consent. *See Federal Sign*, 951 S.W.2d at 408. In response, IT–Davy offers four theories to support its contention that the TNRCC waived its sovereign immunity from suit. Specifically, IT–Davy asserts that the TNRCC's sovereign immunity from suit was waived by: (1) the TNRCC's accepting full contractual benefits ("waiver by conduct"); (2) the TNRCC's entering into a contract with express terms allowing the parties to resolve disputes in court ("waiver by contract"); (3) legislative consent in sections 5.351 and 5.352 of the Water Code; and (4) legislative consent in the Declaratory Judgment Act. We conclude that none of these theories support the conclusion that the TNRCC's immunity from suit was waived.

### A. WAIVER BY CONDUCT

This cause was pending in this Court when we decided in *Little–Tex* that chapter 2260's administrative remedy foreclosed a waiver-by-conduct exception to sovereign immunity in breach-of-contract cases. *Little–Tex*, 39 S.W.3d at 597. However, soon after *Little–Tex* issued, the Legisla-

ture amended chapter 2260 so it does not apply to contracts executed on or before August 30, 1999. Act of June 17, 2001, 77th Leg., R.S., ch. 1422, 2001 Tex. Gen. Laws 5021, 5066 (codified at Tex. Gov't Code § 2260.002(2)). Here, the parties executed the contract in 1990, so chapter 2260 does not apply. Thus, we consider the parties' waiver-by-conduct arguments.

■ Relying on *Federal Sign* and courts of appeals' decisions since that case, IT–Davy argues that the TNRCC waived its immunity from suit by fully accepting benefits under the contract. The TNRCC, also relying on *Federal Sign*, claims that private parties must have legislative consent to sue the State. The TNRCC reasons that a judicially created waiver-by-conduct exception to sovereign immunity would destroy the jurisdictional nature of sovereign immunity. This is because such an exception would force the State to litigate acceptance-of-full-performance allegations before it could receive the traditional protections of sovereign immunity.

In *Federal Sign*, we held that, by entering into a contract, the State does not waive its immunity from suit. *Federal Sign*, 951 S.W.2d at 408. We also reaffirmed the long-standing principle that it is the Legislature's sole province to waive or abrogate the State's immunity from suit. *Federal Sign*, 951 S.W.2d at 409 (citations omitted). But in a footnote, we opined that there may be circumstances "where the State may waive its immunity by conduct other than simply executing a contract...." *Federal Sign*, 951 S.W.2d at 408 n. 1.

Several courts of appeals have relied on this footnote to create a judicially-imposed, equitable waiver of immunity from suit. *See, e.g., DalMac Constr. Co. v. Texas A & M Univ.*, 35 S.W.3d 654 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex.2001); *Aer–Aerotron, Inc. v. Texas Dep't of*

*Transp.*, 997 S.W.2d 687 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 220 (Tex.2001); *Little–Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex. 2001); *Texas S. Univ. v. Araserve Campus Dining Servs. of Texas, Inc.*, 981 S.W.2d 929 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745 (Tex.App.-San Antonio 1998, pet. denied). Specifically, these courts have concluded that, by conduct that includes accepting benefits under a contract for goods or services, the State waives its immunity from a breach-of-contract suit. *See DalMac*, 35 S.W.3d at 657; *Aer–Aerotron*, 997 S.W.2d at 692; *Little–Tex*, 997 S.W.2d at 364–65; *Araserve*, 981 S.W.2d at 935; *Obayashi*, 980 S.W.2d at 750. IT–Davy likewise relies on the *Federal Sign* footnote to ask this Court to fashion a waiver-by-conduct exception to the sovereign-immunity rule. We decline to do so.

We again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity. *See Little–Tex*, 39 S.W.3d at 597; *Federal Sign*, 951 S.W.2d at 409; *Duhart*, 610 S.W.2d at 741; *Missouri Pac.*, 453 S.W.2d at 813–14; *Griffin*, 341 S.W.2d at 152; *Dodgen*, 308 S.W.2d at 840; *Weber*, 219 S.W.2d at 71; *Hosner*, 1 Tex. at 769. As explained above, we created this general rule over one hundred and fifty years ago, and we have steadfastly upheld it for various policy reasons. *See Federal Sign*, 951 S.W.2d at 413–15 (Hecht, J., concurring); *Guillory*, 845 S.W.2d at 813; *Hosner*, 1 Tex. at 769. Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.

Moreover, the Legislature has recognized this general rule by enacting comprehensive schemes that allow contracting parties to resolve breach-of-contract claims against the State. *See* Tex. Civ. Prac. & Rem.Code § 107.001; Tex. Gov't Code §§ 2260.001–.108. In providing private parties with these avenues for redress, the Legislature has attempted to balance competing private and public interests. As explained above, chapter 2260 does not apply here. Consequently, IT–Davy's only option was to obtain legislative consent to sue the TNRCC by following chapter 107's procedures. IT–Davy chose to ignore the legislative scheme and now urges us to do the same. Once again, we decline to interfere. *See Little–Tex*, 39 S.W.3d at 595. Because we have consistently held that only the Legislature can waive sovereign immunity from suit, allowing other governmental entities to waive immunity by conduct that includes accepting benefits under a contract would be fundamentally inconsistent with our established jurisprudence and with the existing legislative scheme. Accordingly, we reject IT–Davy's argument that we should fashion such a waiver-by-conduct exception in a breach-of-contract suit against the State.

**B. WAIVER BY CONTRACT**

IT–Davy also argues that the contract clearly and unambiguously waives sovereign immunity from suit because it includes a provision stating that all claims or disputes related to the agreement will be decided by arbitration or in court. To support this contention, IT–Davy relies on federal cases that recognize Indian tribes' and foreign governments' rights to contractually waive those entities' immunity from suit. *See, e.g., C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418–19, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001); *Atwood Turnkey Drilling, Inc. v. Petroleo Brasi-*

*leiro*, 875 F.2d 1174, 1177 (5th Cir.1989). IT–Davy also points to other states' case law determining that state officials' entering into a contract may waive the State's immunity from suit. *See, e.g., Ace Flying Serv., Inc. v. Colorado Dep't of Agric.*, 136 Colo. 19, 314 P.2d 278, 280 (1957); *Pan–Am Tobacco Corp. v. Dep't of Corrections*, 471 So.2d 4, 5 (Fla.1984); *Smith v. North Carolina*, 289 N.C. 303, 222 S.E.2d 412, 424 (1976).

■ On the other hand, the TNRCC argues that only the Legislature may waive the State's sovereign immunity from suit. Therefore, the TNRCC contends, neither the TNRCC nor its agents, who have authority to execute contracts on its behalf, have the power to waive sovereign immunity in express contractual terms. We agree.

Indian tribes, foreign governments, and even administrative officials in other states may have the power to waive their sovereign immunity by contract. However, this does not control whether an administrative agent, in agreeing to certain contractual terms, can waive the agency's sovereign immunity in Texas. As the TNRCC observes, Texas law is clear. Only the Legislature can waive sovereign immunity from suit in a breach-of-contract claim. *Federal Sign*, 951 S.W.2d at 409. Administrative agencies, such as the TNRCC, are part of our government's *executive* branch. *See, e.g., Williamson Pointe Venture v. City of Austin*, 912 S.W.2d 340, 344 (Tex. App.-Austin 1995, no writ). Consequently, administrative agencies cannot waive immunity from suit. It also follows that administrative agents—even those who have authority to contract on the agency's behalf—cannot waive their agencies' immunity from suit.

■ Here, the Water Code designates the TNRCC's executive director as the person who has the authority to negotiate and execute contracts on the TNRCC's behalf so the TNRCC can carry out its "powers, duties, and responsibilities." TEX. WATER CODE § 5.229. However, this provision does not clearly and unambiguously waive the TNRCC's immunity from breach-of-contract suits. *See* TEX. GOV'T CODE § 311.034; *York*, 871 S.W.2d at 177. Moreover, it does not clearly and unambiguously give the executive director the authority to do so. Therefore, even though the TNRCC's executive director had the authority to enter into the contract with IT–Davy on the TNRCC's behalf, he did not have authority to, and thus did not, waive the TNRCC's immunity from suit.

## C. WAIVER BY THE TEXAS WATER CODE

■ IT–Davy contends that Water Code sections 5.351 and 5.352 expressly waive the TNRCC's sovereign immunity from suit. As previously discussed, these sections allow a person "affected by a [TNRCC] ruling, order, decision, or other act"—or by the TNRCC's or its executive director's "inaction"—to seek judicial review of such action or inaction in district court. TEX. WATER CODE §§ 5.351, 5.352.

The TNRCC responds that Water Code sections 5.351 and 5.352 give trial courts only limited power, which is to review administrative actions of a regulatory nature. Thus, the TNRCC argues that these sections do not give trial courts original jurisdiction to decide breach-of-contract claims and, therefore, they do not waive the State's immunity from suit. *See State v. Operating Contractors*, 985 S.W.2d 646, 656 n. 14 (Tex.App.-Austin 1999, pet. denied). We agree.

No court has defined the precise scope of a trial court's jurisdiction under sections 5.351 and 5.352. However, one court of appeals has construed analogous language in the Health and Safety Code as granting

only a limited right to review certain administrative actions. *See Operating Contractors*, 985 S.W.2d at 656 n. 14. Specifically, the court of appeals concluded that section 382.032 of the Health and Safety Code authorizes judicial review of "rulings of a regulatory nature, not of a contractual nature." *Operating Contractors*, 985 S.W.2d at 656 n. 14.

The Code Construction Act provides that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034. And, the Legislature knows how to clearly and unambiguously waive sovereign immunity from suit. For instance, the Texas Tort Claims Act provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter." Tex. Civ. Prac. & Rem.Code § 101.025(a). But this language is readily distinguishable from language that allows an affected party to seek judicial review of an administrative action. *See, e.g., Operating Contractors*, 985 S.W.2d at 656 n. 14.

Here, neither section 5.351 nor 5.352 clearly and unambiguously waives the TNRCC's sovereign immunity from suit for breach-of-contract claims. Rather, their plain texts expressly provide only for judicial review of administrative action or inaction. *See* Tex. Water Code §§ 5.351, 5.352; *see also Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex.2000). Moreover, these provisions appear in the Water Code subchapter entitled "Judicial Review," which defines the procedures and remedies available to obtain judicial review of certain TNRCC actions. *See* Tex. Water Code §§ 5.351–.357.

Thus, we conclude that Water Code sections 5.351 and 5.352 do not waive the TNRCC's sovereign immunity from suit for breach-of-contract claims. Moreover,

because IT–Davy does not seek judicial review of any TNRCC regulatory action, we reject IT–Davy's argument that the Water Code waives sovereign immunity from suit here.

### D. Waiver by The Declaratory Judgment Act

IT–Davy further claims that the Declaratory Judgment Act (DJA) waives the TNRCC's sovereign immunity from suit. IT–Davy sought declaratory relief, asking the trial court to determine its rights and status, and the TNRCC's legal obligations, under the contract. *See* Tex. Civ. Prac. & Rem.Code § 37.004(a). More specifically, IT–Davy asked the trial court to declare that IT–Davy performed additional work and incurred additional expenses beyond the contract's scope, and thus, the TNRCC owed IT–Davy more money. IT–Davy relies on *Leeper* to assert that the DJA waives the State's immunity from both suit and liability. *See Leeper*, 893 S.W.2d at 446.

In response, the TNRCC argues that the DJA does not authorize private parties to sue the State for money damages. Further, the TNRCC contends that IT–Davy's DJA claim is merely an attempt to confer jurisdiction on the trial court to decide the breach-of-contract claim. We agree.

IT–Davy misplaces its reliance on *Leeper*. In *Leeper*, home-school parents and curriculum providers brought a class-action suit against state officials, challenging the Texas Education Agency's construction of the compulsory school-attendance law. *Leeper*, 893 S.W.2d at 432. They sought a declaration that the compulsory attendance law's private-school exemption includes home-schooled children, and therefore, the home-school parents could not be prosecuted for keeping their children home. We determined that the DJA expressly allows persons to challenge ordi-

nances or statutes. *Leeper*, 893 S.W.2d at 446. Moreover, the DJA requires challengers to join governmental entities in suits to construe legislative pronouncements, and the DJA authorizes awarding attorneys' fees. *Leeper*, 893 S.W.2d at 446. Accordingly, we held that the DJA necessarily waives governmental immunity for attorneys' fees in suits to construe legislative pronouncements. *Leeper*, 893 S.W.2d at 446.

However, *Leeper's* limited waiver does not allow private parties to sue the State for money damages under the DJA. And IT–Davy is not asking the trial court to construe a legislative enactment. Rather, it is seeking a declaratory judgment only in an attempt to have the trial court decide its breach-of-contract claim. Thus, we conclude IT–Davy's request for declaratory relief does not waive the TNRCC's sovereign immunity from suit and cannot be maintained without legislative consent. *See Federal Sign*, 951 S.W.2d at 404; *Dodgen*, 308 S.W.2d at 840.

## V. CONCLUSION

As we concluded in *Little–Tex*, "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Little–Tex*, 39 S.W.3d at 597. This means that a private party, such as IT–Davy, must have legislative consent—by statute or resolution—to sue the State for claims arising from an alleged breach of contract. *See Federal Sign*, 951 S.W.2d at 411. Although the Water Code and the DJA provide limited waivers of immunity, neither statute allows IT–Davy to sue the TNRCC for breach of contract. And IT–Davy did not obtain a legislative resolution allowing it to sue the TNRCC. *See* Tex. Gov't Code § 107.001. Finally, because only the Legislature—not the TNRCC or its agents—can waive sovereign immunity, neither the TNRCC's conduct in accepting benefits under the contract, nor its executive director's executing the contract with a remedies provision, waived its immunity from suit.

Accordingly, we reject IT–Davy's arguments that the TNRCC's sovereign immunity from suit was waived in this case. We reverse the court of appeals' judgment and dismiss IT–Davy's claims for want of jurisdiction. *See* Tex.R.App. P. 60.2(c).

Justice HECHT issued an opinion concurring in the judgment in which Chief Justice PHILLIPS, Justice OWEN, and Justice JEFFERSON joined.

Justice ENOCH issued a dissenting opinion.

Justice HECHT, joined by Chief Justice PHILLIPS, Justice OWEN, and Justice JEFFERSON, concurring in the judgment.

I agree that the Texas Natural Resource Conservation Commission's immunity from suit has not been waived in this case for any of the reasons argued by IT–Davy. I cannot join, however, in the broad language of Justice Baker's opinion that indicates that the State is always immune from suit for breach of contract absent legislative consent. I doubt whether governmental immunity from suit for breach of contract can be applied so rigidly, but we certainly need not decide that issue to resolve this case. Accordingly, I concur only in the Court's judgment.

In his opinion for the Court in *Federal Sign v. Texas Southern University*, Justice Baker noted that there may be "circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it con-

tracts."[1] In his opinion today he appears to have abandoned this view, stating that "allowing ... governmental entities to waive immunity by conduct that includes accepting benefits under a contract would be fundamentally inconsistent with out established jurisprudence."[2] He does not explain this about-face. The Court was correct in *Federal Sign*. As one example, it has long been held that the State can waive immunity by filing suit.[3] There may be others, such as debt obligations.[4] We need not here decide the issue for all time, any more than we needed to in *Federal Sign*.

Federal Sign won a bid to install basketball arena scoreboards at Texas Southern University, but before it performed any work on TSU's property or delivered any materials, TSU canceled the contract. The Court held that Federal Sign's suit against TSU for breach of contract was barred by immunity. In a concurring opinion, I raised the question whether the result would be different "if TSU had accepted the scoreboards, acknowledged that Federal Sign had fully complied with the contract, but refused to pay the agreed price".[5] That question, I said, the Court need not and did not answer. In the present case, IT–Davy argues that its situation is like the hypothetical I raised in *Federal Sign*, but that simply is not true. My hypothetical supposed a government agency that chiseled a contractor just because it could get away with doing so. Here, TNRCC and IT–Davy have a legitimate disagreement over what price should be paid for the extra work IT–Davy per-

formed beyond that required by its contract. This is nothing more than an ordinary contract dispute.

I adhere to the views I expressed in my concurring opinion in *Federal Sign v. Texas Southern University* that the Legislature is better suited than the Judiciary to weigh the policy and political concerns that inhere in determining whether the State should be immune from suit for breaching its contracts.[6] As I explained there,

> not all the factors that weigh in determining the State's liability on its contracts can be assessed in a judicial proceeding. Must the State honor all long-term contracts when they no longer serve the public interest, continuing to spend tax revenues on matters that no longer benefit the people? If so, then the government's ability to respond to changing conditions for the welfare of the people as a whole is impaired. Moreover, each succeeding administration may become increasingly bound by the contracts of prior administrations with no way of escape except payment of public resources. Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 Vanderbilt L.Rev. 1529, 1530 (1992). Would state officials be unduly anxious to conform to judicial policy wishes if they knew that judges could determine the State's liability for millions of dollars? *See id.* Would the prospect of liability smother policy initiatives based upon truly changed circumstances? *See id.* at 1530–1531. Governmental immunity rests on such concerns and not sim-

---

1. 951 S.W.2d 401, 408 n. 1 (Tex.1997).

2. *Ante* at 857.

3. *Anderson, Clayton & Co. v. State*, 122 Tex. 530, 62 S.W.2d 107, 110 (Comm'n App.1933, op. adopted); *Kinnear v. Texas Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam).

4. *Federal Sign*, 951 S.W.2d at 412 (Hecht, J., concurring).

5. *Id.*

6. *Id.* at 412–416.

ply on the archaic idea that "the king can do no wrong". Such political concerns pertain to the nature of democratic government and cannot be assessed by a jury in a contract suit. They are best determined by the people's representatives in the Legislature.[7]

I do not include among these justifications for a legislative determination of waivers of immunity JUSTICE BAKER's idea that "subjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments."[8] The decision is best left to the Legislature, not because the State is above defending its actions or paying its debts, but because judicial proceedings are not the only, and not necessarily the best, avenue for resolving contract disputes with the State.

In 1999, the Legislature provided a claims procedure for certain kinds of contract disputes with the State by adopting chapter 2260 of the Government Code.[9] Chapter 2260 limits the damages that can be recovered.[10] A dispute not covered by this procedure may be presented to the Legislature with a petition for permission to sue the State under chapter 107 of the Civil Practice and Remedies Code.[11] I noted in *Federal Sign* that from 1989 through 1995, the Legislature granted only nine of 173 petitions for permission to sue under chapter 107;[12] in the three legislative sessions since then it has granted ten of forty-nine such petitions, and it granted two others to permit claims under chapter 2260 that could not otherwise have been made.[13] Both by enacting chapter 2260 and by considering petitions under chapter 107, it remains true that "the Legislature has taken an active role in determining what claims have sufficient merit that they should be prosecuted."[14]

JUSTICE ENOCH's continued insistence that justifications of governmental immunity for contract suits are unconvincing is not without force, given that the vast majority of states have relinquished such immunity.[15] But his argument that such immunity works an injustice goes too far. He simply disregards the fact that even if the State were not immune from contract suits, it would not be required to pay the judgments rendered without approval of the Legislature. Thus, recourse to the Legislature is unavoidable. At worst, it seems to me, petitioning the Legislature for a waiver of immunity merely delays resolution of claims, and the process provided by new chapter 2260 may prove speedier.

In sum, I have little difficulty concluding that IT–Davy's suit is barred by immunity, but I cannot absolutely foreclose the possibility that the State may waive immunity in some circumstances other than by statute.

CRAIG T. ENOCH, Justice, dissenting.

From its perspective, IT–Davy, in good faith, bargained for and fully performed its

---

7. *Id.* at 414.

8. *Ante* at 865.

9. TEX. GOV'T CODE §§ 2260.001–.108.

10. *Id.* § 2260.003.

11. TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005.

12. *Federal Sign*, 951 S.W.2d at 413 (Hecht, J., concurring) (citing TEXAS HOUSE OF REPRESENTA- TIVES, INTERIM REPORT TO THE 75TH LEGISLATURE 9 (1996)).

13. *See* Texas Legislature Online at http://www.capitol.state.tx.us/ (derived from searches of concurrent resolutions).

14. *Id.*

15. TEXAS HOUSE OF REPRESENTATIVES, INTERIM RE- PORT TO THE 75TH LEGISLATURE 18–29 (1996).

obligations to the State under a binding contract. And in exchange, it expects to be paid the agreed upon compensation—an amount it claims to be $6,723,655. The State, on the other hand, asserts that it owes no more than $700,000. Once again for citizens who have contractual disputes with the State, the Court, itself, closes the courthouse doors and then throws up its hands, claiming helplessness.

I remind the Court that the doctrine of sovereign immunity is not a creation of the Legislature, but a creation of this Court. And it improperly reads the doctrine of sovereign immunity to close the courthouse to contract suits against the State, especially when the Legislature, as in this case, has given the executive director the specific power to enter into contracts "for the purpose of carrying out the powers, duties, and responsibilities of the [TNRCC]." [1]

Ironically, JUSTICE BAKER admonishes the State to not use sovereign immunity as a "shield to avoid paying for benefits the State accepts under a contract," [2] a proposition with which I assume all the Justices on this Court would agree. But the State is doing something worse—interposing sovereign immunity to close the courthouse doors so that the merits of the claim can't even be determined. Of course, as the Court suggests, IT–Davy *could* ask the

Legislature to waive immunity from suit. But surely a contracting party should not be dependent on a stable of lobbyists, assuring the support of seventy-six representatives, sixteen senators and one governor, just to open the courthouse. IT–Davy contracted with the TNRCC, which was specifically authorized by the legislature to enter into contracts. The Court should not hand to the Legislature IT–Davy's keys to the courthouse.

Oddly, JUSTICE HECHT, rather than join JUSTICE BAKER, offers hope that there remains another key—a magic key that will loosen sovereign immunity's lock and open the courthouse doors. But it is false hope. He is unable to identify and can give only vague clues about what that key may look like. This just encourages endless, fruitless litigation as each new contracting party, thinking it has discovered the key, seeks to open the courthouse door. As happened with the many parties in the cases cited below and to IT–Davy in this case, it will learn from this Court that, alas, it didn't have the magic key.

As the list of those shut out of the courthouse continues to grow, the Court will, perhaps, begin to appreciate the plight it forces on parties contracting with the State. Today, we add IT–Davy to that list.[3] For the reasons expressed in my

---

1. TEX. WATER CODE § 5.229.

2. 74 S.W.3d at 854.

3. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 600 (Tex.2001); *Texas Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220 (Tex.2001); *Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 408 (Tex.1997); *Tex. Dep't of Pub. Safety v. Int'l Capital Corp.,* 40 S.W.3d 687 (Tex.App.-Austin 2001, no pet.); *Denver City Ind. Sch. Dist. v. Moses,* 51 S.W.3d 386 (Tex.App.-Amarillo 2001, no pet.); *Gendreau v. Medical Arts Hosp.,* 54 S.W.3d 877 (Tex.App.-Eastland 2001, pet. filed); *City of Houston v. Northwood Mun. Util. Dist. No.*

*1,* 73 S.W.3d 304 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Tex. Dept. of Pub. Safety v. Rivera,* No. 13–01–00446–CV, 2001 Tex. App. LEXIS 7681 (Corpus Christi Nov. 15, 2001, no pet.) (not designated for publication); *Landry's Crab Shack v. Bd. of Regents,* No. 03–00–00690–CV, 2001 WL 1240832, 2001 Tex.App. LEXIS 6948 (Austin Oct. 18, 2001, no pet.) (not designated for publication); *Ondemir v. Bexar County Clerk,* No. 04–00–00497–CV, 2001 WL 1136074, 2001 Tex. App. LEXIS 6488 (San Antonio Sept. 26, 2001, pet. denied) (not designated for publication); *O'Dell v. Perry,* No. 03–00–00603–CV, 2001 WL 726387, 2001 Tex.App. LEXIS 4367 (Austin June 29, 2001, no pet.) (not designat-

dissent in *General Services Commission v. Little–Tex Insulation Company*[4] and *Federal Sign v. Texas Southern University*,[5] I again respectfully dissent.

ed for publication); *State DOT v. Ramirez*, 72 S.W.3d 376 (Austin 2001, pet. filed) (not designated for publication); *Texas A & M Univ. Sys. v. AFEX Corp.*, No. 03–00–00222–CV, 2001 WL 193881, 2001 Tex.App. LEXIS 1266 (Austin Mar. 1, 2001, no pet.) (not designated for publication).

