

NUMBER 13-13-00363-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALTERNATIVES UNLIMITED,
INC.,                                                                              Appellant,

v.

RAYMONDVILLE INDEPENDENT
SCHOOL DISTRICT,                                                                    Appellee.

## On appeal from the 197th District Court
## of Willacy County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Alternatives Unlimited, Inc. ("AU"), challenges the trial court's judgment granting a plea to the jurisdiction filed by appellee, Raymondville Independent School District ("RISD"). By two issues, AU contends the trial court erred in (1) finding that a contract between the parties had not been properly executed and (2) failing to apply the

waiver by conduct theory.  We affirm.

## I. BACKGROUND

AU sued RISD on March 25, 2013, alleging breach of contract and breach of the duty of good faith and fair dealing.  AU's original petition alleged that RISD approached AU in 2012 to discuss the possibility of AU providing Supplemental Educational Services ("SES")[1] to one of RISD's constituent institutions, Raymondville High School ("RHS"). According to AU, on or about May 16, 2012, RHS principal Benjamin Clinton sent AU an SES contract via facsimile and stated that "all it needed was for AU to sign the contract and return it to [RISD] in order to begin services."  AU contends that its vice-president signed the contract and returned it to RISD that same day.  A copy of the contract was attached to AU's petition.

AU alleges that, pursuant to the contract, it entered "the agreed upon billing rate for AU's SES tutoring services" into EZSES, an online system for managing SES services. AU contends that, on or about June 18, 2012, RISD Superintendent Johnny Pineda approved the billing rate that was entered into the EZSES system, and that RISD began assigning eligible students to AU shortly thereafter.  AU's petition states that it submitted student learning plans into the EZSES system and that RISD approved the plans through that system.

AU claims that it then began tutoring services on June 22, 2012 and completed those services on or about July 31, 2012.  It claims that it submitted invoices to RISD on

---

[1] SES refers to a provision of the No Child Left Behind Act of 2001 under which public schools designated as in need of improvement are required to offer tutoring and other extra academic help, through state-approved providers, to children of low-income families.  *See* 20 U.S.C. § 6316(e); *see also Description of Supplemental Educational Services*, U.S. DEP'T OF EDUC., http://www.ed.gov/nclb/choice/help/ses/ description.html (last visited Mar. 2013).

2

July 16, 2012 and August 15, 2012.[2]  According to AU, RISD paid the first invoice in the amount of $8,933.33 but did not pay amounts due under the second invoice.  RISD later refused to pay amounts allegedly due under the second invoice and disputed the existence of a contract.  AU claimed that this constituted breach of contract and breach of the duty of good faith and fair dealing.  It sought $25,790 in damages plus attorney's fees.

RISD filed an answer denying AU's allegations and a plea to the jurisdiction contending that it is immune from suit as a local government entity and that its immunity has not been waived.  Although governmental immunity from suit may be waived with respect to certain contract claims, *see* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005), RISD argued that it never formally executed a contract with AU.  RISD noted that the purported contract attached to AU's petition did not contain the signature of any representative of RISD.  RISD further argued that, even if the purported contract had been executed, it is not enforceable because it was not ratified by the superintendent or the school board.  RISD did not attach evidence to its plea.

AU filed a response to RISD's plea asserting that governmental immunity does not bar its suit because:  (1) RISD waived immunity by entering into a contract with AU; (2) RISD assented to the contract, thereby making the contract enforceable and triggering the waiver of immunity under local government code section 271.152, by "taking deliberate actions indicating it had indeed consented to [its] terms"; and (3) RISD waived immunity by its conduct.

After a hearing, the trial court granted the plea and dismissed AU's suit.  This

_____

[2] AU states in its petition that the invoices are attached as exhibits thereto.  However, the record does not contain copies of the invoices.

3

appeal followed.

## II. DISCUSSION

### A. Standard of Review

In reviewing whether a plea to the jurisdiction was properly granted, we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiff and looking to the pleader's intent. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004)). If the pleadings neither affirmatively demonstrate nor negate jurisdiction, the plaintiff should be given an opportunity to amend the pleadings. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action. *Id.* In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* If the evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *Id.* However, if the relevant evidence is undisputed or fails to raise a fact question on jurisdiction, the plea to the jurisdiction is ruled on as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

### B. Applicable Law

The doctrine of sovereign immunity provides that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). Governmental immunity operates like sovereign immunity to afford similar

4

protection to subdivisions of the State, including counties, cities, and school districts. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

In Texas, governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the entity altogether. *Tooke*, 197 S.W.3d at 332. Immunity from liability is an affirmative defense that must be pleaded or else is waived. *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000). Immunity from suit, on the other hand, deprives a court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224. By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement. *Tooke*, 197 S.W.3d at 332. However, the act of entering into a contract does not waive immunity from suit; instead, we defer to the legislature to waive immunity from suit because this allows the legislature to protect its policymaking function. *Id.* This is particularly true in the context of contract claims, where "legislative control over sovereign immunity allows the legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *Id.* Accordingly, governmental immunity may be waived only by "clear and unambiguous" statutory language. *Id.* at 332–33; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2005) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Section 271.152 of the Texas Local Government Code provides:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this

5

subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (West 2005). A school district such as RISD is a "local government entity" for purposes of the statute. *See id.* § 271.151(3)(B).

**C.    Analysis**

AU concedes that the contract at issue was not signed by an authorized agent of RISD; instead, it contends that RISD "properly executed" the contract by "manifesting unconditional assent" to its terms by its conduct. AU argues by its first issue that, because the contract was "properly executed," the waiver of immunity provided by the local government code applies. *See id.* § 271.152. By its second issue, AU contends that, even if the statutory waiver of immunity does not apply, the trial court should have concluded that RISD waived its immunity by virtue of its conduct. In response, RISD contends that the purported contract was not "properly executed" because it was not signed by an RISD representative.[3] Because AU's issues both turn on whether a governmental unit may waive immunity by conduct other than signing a contract, we address them together.

"Contracts require mutual assent to be enforceable," and "[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with

---

[3] RISD also contends that the contract was not "properly executed" because (1) the RHS principal lacked authority to bind RISD, and (2) the RISD school board did not approve of the contract in compliance with the Texas Open Meetings Act. Because of our conclusion herein, we need not address whether the contract was not "properly executed" for these alternate reasons.

6

the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). However, as AU notes, the Texas Supreme Court has recognized "that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent." *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010).

> If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract. If there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent. An unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract.

*Id.* (ellipses and citations omitted). In *Mid-Continent*, the appellant insurance company sought to invalidate an indemnity agreement between its insured, All States, and appellee, Global. *Id.* at 156. Mid-Continent argued that the contract was invalid because appellee, after receiving the contract from the insured, did not sign the agreement. *Id.* at 157. The Court disagreed, noting:

> Global offered the contract to All States, and All States accepted not only by signing and faxing the agreement back to Global, but also by beginning performance on the contract work. . . . Further, there was mutual assent to All States's work by Global. All States and Global agree that the insured contract was effective, and the companies were operating under that agreement when the accident occurred.

*Id.* Because there was no evidence indicating that the parties intended for signatures to be required, the insurance policy was enforceable. *Id.* at 157–58.

AU contends that this case is analogous to *Mid-Continent*. It argues that RISD manifested its assent to the agreement by approving the billing rate and student learning plans that were entered into the EZSES system and by paying amounts due under AU's July 2012 invoice.

We agree with AU that there appears to be a fact issue regarding whether RISD, by its conduct, manifested its assent to the terms of the purported agreement. However, Texas courts have consistently rejected the argument that immunity may be waived by virtue of the conduct of the governmental unit. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[The plaintiff] advances a waiver-by-conduct argument . . . but we have consistently rejected that position and held that 'the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract.'") (quoting *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies."); *see also La Joya Indep. Sch. Dist. v. Bio-Tech Solutions, Inc.*, No. 13-07-00484-CV, 2009 WL 1089459, at *4 (Tex. App.—Corpus Christi Apr. 23, 2009, no pet.) (mem. op.); *Patterson v. Gulf Marine Inst. of Tech.*, No. 13-06-067-CV, 2008 WL 525424, at *8 (Tex. App.—Corpus Christi Feb. 28, 2008, pet. denied) (mem. op.). *Mid-Continent* is distinguishable because it did not involve a governmental entity. *See* 323 S.W.3d at 153.

Our opinion in *Vantage Systems Design, Inc. v. Raymondville Independent School District*, 290 S.W.3d 312 (Tex. App.—Corpus Christi 2009, writ ref'd n.r.e.), is also instructive. In that case, RISD never signed a contract but approved the plaintiff's proposal and made at least one payment for work done by the plaintiff. *Id.* at 314. The plaintiff argued that, even though there was no signed contract, multiple documents were exchanged between the parties which, taken together, formed a "properly executed"

8

contract. *Id.* at 316. We held that the local government code's waiver of immunity did not apply because, while the plaintiff "pleaded the existence of a contract, it has not marshaled one, which in this situation is a key jurisdictional fact." *Id.* We declined to "apply the common law of contracts to a governmental immunity question." *Id.*

AU nevertheless argues that a governmental unit may waive immunity by its conduct in "extraordinary factual circumstances," relying on *Texas Southern University v. State Street Bank & Trust Co.*, 212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In *State Street*, the First Court of Appeals held that sovereign immunity did not bar a breach-of-contract suit against a public university because of the "extraordinary factual circumstances" involved in that case. *Id.* at 908 (citing *IT-Davy*, 74 S.W.3d at 862 (Hecht, J., concurring) ("I cannot absolutely foreclose the possibility that the State may waive immunity in some circumstances other than by statute.")). The facts in *State Street* included the following: (1) the university notified the contractor that its board of regents had approved an agreement for the contractor to audit the university's energy system; (2) university officials instructed the contractor to commence the audit; (3) the university's general counsel stated that the audit agreement was "acceptable for final execution"; (4) the contractor completed the audit; (5) the contractor then submitted a proposal to the university to perform six energy conservation projects; (6) the university's board of regents authorized approval of the projects and the university president executed the agreement; and (7) the university's general counsel informed the auditor that an equipment lease agreement needed for the projects was "duly authorized by all necessary action on the part[] of [the university]" and was "legal, valid and binding." *Id.* at 907–08.

Similar "extraordinary" factual allegations are absent from this case. In particular,

AU does not contend, as the contractor in *State Street* did, that "government officials lured [it] into the [contract] with false promises that the contract would be valid and enforceable, then disclaimed any obligation on the contract by taking the position that the contract was not valid after all." *Id.* at 908; *see Employees Ret. Sys. of Tex. v. Putnam, LLC*, 294 S.W.3d 309, 327 n.17 (Tex. App.—Austin 2009, no pet.) (distinguishing *State Street* on the basis that the governmental unit's conduct did not rise to the level of "extraordinary factual circumstances"); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 225 (Tex. App.— Houston [14th Dist.] 2008, no pet.) ("Waiver by conduct is not warranted in ordinary contract disputes."); *see also City of Deer Park v. Ibarra*, No. 01-10-00490-CV, 2011 WL 3820798, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.) (distinguishing *State Street* on the basis that there were no "extraordinary factual circumstances" and noting that "[t]here is no allegation that the City lured the workers into performing their jobs with false promises").

Even if AU was able to show "extraordinary factual circumstances," we note that *State Street* has been disavowed by at least one other court of appeals. *See Leach v. Tex. Tech Univ.*, 335 S.W.3d 386, 401 (Tex. App.—Amarillo 2011, pet. denied)[4]; *Ahmed v. Tex. Tech Univ. Health Sci. Ctr. Sch. of Med. at Amarillo*, No. 07-11-00176-CV, 2013

---

[4] In *Leach*, the Amarillo Court of Appeals stated:

> [*State Street*] contradicts the Supreme Court's statements in *Little-Tex* [39 S.W.3d 591, 598 (Tex. 2001)], *IT-Davy* [74 S.W.3d 849, 857 (Tex. 2002)], and [*Texas Parks & Wildlife Department v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 695 n.2 (Tex. 2007)] about the only avenue for redress being through the Texas Legislature. If the highest civil court in Texas truly means what it said, then the holding in *State Street* simply is wrong. If, on the other hand, there may still be instances akin to those in *State Street* warranting the application of waiver by conduct, then the Supreme Court's utterances about the legislature having the exclusive authority to waive sovereign immunity are inaccurate. In either case, it is a matter for the Supreme Court (or Texas Legislature) to resolve, and we have no choice but to abide by their decision.

*Leach v. Tex. Tech Univ.*, 335 S.W.3d 386, 401 (Tex. App.—Amarillo 2011, pet. denied).

WL 265076, at *6 (Tex. App.—Amarillo Jan. 23, 2013, no pet.) (mem. op.). Moreover, since *State Street*, the Texas Supreme Court has reaffirmed its stance against waiver-by-conduct in governmental immunity cases. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011). In *Sharyland*, the Court stated that "[c]reating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies." *Id.* (citing *IT-Davy*, 74 S.W.3d at 857). The Court further noted that "the Legislature had enacted comprehensive schemes that allow contracting parties to resolve breach-of-contract claims against the government" and that "[b]y providing these avenues for redress, the Legislature has balanced competing private and public interests—a balance that would be thwarted if we allowed waiver-by-conduct exceptions in breach-of-contract actions against the government." *Id.*

In light of the Supreme Court's opinion in *Sharyland* and the specific facts of this case, we conclude that RISD did not waive governmental immunity by its conduct. The trial court therefore did not err in granting RISD's plea to the jurisdiction. AU's issues are overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
20th day of March, 2014.

11