[JH1] 

 

 

 

                                                                                                        

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-322-CV

 

CITY OF CARROLLTON                                                         APPELLANT

 

                                                   V.

 

CRAIG B. SINGER AND CAROL G. SINGER                               APPELLEES

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This is an appeal from the
trial court=s denial of
appellant the City of Carrollton=s plea to the jurisdiction on governmental immunity grounds.  In its sole issue, the City contends that it
is entitled to immunity from the breach of contract claims brought by appellees
Craig B. and Carol G. Singer.  The
question we must answer is whether, by contracting with the Singers to perform
certain improvements in exchange for their deed of a portion of their property
for the City=s use as a
roadway, the City entered into a settlement agreement of an eminent domain
claim, thereby submitting to the trial court=s jurisdiction under the Texas Constitution and the reasoning of Texas
A&M University-Kingsville v. Lawson, 87 S.W.3d 518 (Tex. 2002).  We conclude that it did.  We therefore affirm the trial court=s denial of the City=s plea to the jurisdiction.

Background Facts

The Singers own approximately
99 acres in Carrollton at the corner of Carrollton Parkway and Old Denton Road
in Denton County.  In December 2001, the
City sent the Singers a letter stating,

As
you are aware, the Denton County Fresh Water Supply District 1-A is in the
process of extending Windhaven Parkway (Carrollton Parkway) from FM 544 to the
intersection of Old Denton Road (FM 2281). 
In order to do so, it is necessary to acquire a portion of your property
as depicted in Exhibit A.  Attached to
this letter are the ROW [right of way] documents, copies of the executed
interlocal contract between the city of Carrollton and the Denton County Fresh
Water Supply District 1-A, a copy of the City Council agenda item memo, a copy
of Addendum One to the interlocal agreement, a permission letter to enter your
property for the purpose of relocating the existing fence and a permission
letter to allow Co-Serve to enter your property for the purpose of relocating
the existing utility poles.

 

We
are requesting that you sign the ROW documents to transfer the described
property to the city of Carrollton and that you sign the permission letters to
allow Co-Serve and our fence contractor to relocate the utility poles and
remove the fence to allow for the construction of the roadway.

. . . .

Our office has already bid
the fence relocation and reconstruction project and anticipates awarding the
bid on January 8, 2002. . . .

[Emphasis added.] 








The Singers rejected the City=s initial offer, but after negotiating further, they reached an
agreement with the City:  in exchange for
the Singers= conveyance
of the right of way needed for extension of the road, the City would construct
a new entrance from Carrollton Parkway that would be equivalent in Amaterials, dimension[,] and appearance@ to the Singers= existing
entrance on Old Denton Road, and the City would also reimburse the Singers up
to $10,000 for Aprofessional
service work@ in
connection with the project.[1]  The Singers allege that the City also
specifically agreed not to close the median cut on Old Denton Road until the
new entrance from Carrollton Parkway had been completed. 

The Singers conveyed the land
to the City.  The deed contained the
following language:  

By accepting this deed, Grantee [the City]
acknowledges that the Land is valued at $165,000 per acre.  

The Land is
being deeded for the construction of the street as placed and shown in the
survey dated December 19, 2001 . . . . 
If the street is not constructed as shown . . . then
this deed becomes void abinitio [sic] and the Land reverts back to Grantors.@[2]








Although the City extended
Carrollton Parkway and constructed a new entrance from it as promised, the
Singers were not satisfied with the quality and appearance of the new
entrance.  In addition, the City closed
the median cut from Old Denton Road before the new entrance from Carrollton
Parkway was complete.[3]

The Singers sued the City for
money damages and attorneys= fees.  The Singers alleged that
the City breached the parties= agreement in several respects. 
First, the Singers alleged that the City failed to construct the new
Carrollton Parkway entrance in accordance with the parties= agreement.  Specifically, the
Singers alleged that the City failed to (1) provide landscaping and lighting
identical to the landscaping and lighting of the old entrance, (2) place a ANo Trespassing Private Drive@ sign adjacent to the new gate, (3) properly install electricity at
the new entrance, (4) install an exit sensor for the new gate, and (5) install
a sign instructing visitors how to gain access to the property.  The Singers also alleged that the City failed
to complete a new fence and failed to install a sprinkler system.  The Singers further complained about the City=s premature closing of the Old Denton Road entrance. 








The Singers initially pled
that the City was not immune from suit under section 51.075 of the local
government code, which provides that a municipality may Aplead and be impleaded.@  Tex. Loc. Gov=t Code Ann. ' 51.075 (Vernon 1999).  The City
filed a plea to the jurisdiction; the parties agreed to abate the case pending
the supreme court=s
determination of the same issue in Tooke v. City of Mexia, 197 S.W.3d
325 (Tex. 2006).  When the supreme court
held that section 51.075 alone does not waive a city=s immunity from suit, id. at 342-43, the Singers amended their
petition, asserting that the City did not have immunity from suit under the
Texas Constitution and A&M because its contract with the Singers
was, in essence, a settlement agreement of an eminent domain claim.  The trial court agreed and denied the City=s plea after a hearing.  The
City filed this interlocutory appeal.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 51.014(a)(8) (Vernon Supp. 2006).

Immunity and Jurisdiction








Governmental
immunity defeats a trial court=s subject matter jurisdiction and thus is properly asserted in a plea
to the jurisdiction.  See Tex. Dep=t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 225-26 (Tex. 2004); Tex. Dep=t of Transp. v. Andrews, 155 S.W.3d
351, 355-56 (Tex. App.CFort Worth
2004, pet. denied).  The trial court must
determine at its earliest opportunity whether it has the constitutional or
statutory authority to decide the case before allowing the litigation to
proceed.  Miranda, 133 S.W.3d at
226.

We review the trial court=s ruling on a plea to the jurisdiction based on immunity from suit
under a de novo standard of review. 
Id. at 225-26, 228; Tex. Natural Res. Conservation Comm'n v.
IT‑Davy, 74 S.W.3d 849, 855 (Tex. 2002); Andrews, 155 S.W.3d
at 355-56.  Whether a pleader has alleged
facts that affirmatively demonstrate a trial court=s subject matter jurisdiction, or whether undisputed evidence of
jurisdictional facts establishes a trial court=s jurisdiction, is a question of law. 
Miranda, 133 S.W.3d at 226. 
Here, the nature of appellants= claims is not disputed; rather, it is the legal effect of those
claims that is disputed.  Thus, we
determine as a matter of law whether the alleged facts establish jurisdiction.








When a plea to the
jurisdiction challenges the pleadings, we determine if the pleader has alleged
facts that affirmatively demonstrate the court=s jurisdiction to hear the cause. 
Id.; Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993).  We construe
the pleadings liberally in favor of the plaintiff and look to the pleader=s intent.  Miranda, 133
S.W.3d at 226; Tex. Ass'n of Bus., 852 S.W.2d at 446.  If the pleadings do not contain sufficient
facts to affirmatively demonstrate the trial court=s jurisdiction but do not affirmatively demonstrate incurable defects
in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs
should be afforded the opportunity to amend. 
Miranda, 133 S.W.3d at 227-28. 
However, if the pleadings affirmatively negate the existence of
jurisdiction, then a plea to the jurisdiction may be granted without allowing
the plaintiffs an opportunity to amend.  Id.
at 228.

Applicable Law

Governmental immunity
protects governmental entities from lawsuits for damages absent legislative
consent.  See Fed. Sign v. Tex. S. Univ.,
951 S.W.2d 401, 405 (Tex. 1997); Serv. Employment Redevelopment v. Fort
Worth ISD, 163 S.W.3d 142, 149 (Tex. App.CFort Worth 2005, pet. filed). 
The doctrine of governmental immunity encompasses two distinct concepts:  (1) immunity from suit (barring a lawsuit
unless the legislature expressly gives its consent to suit) and (2) immunity
from liability (even if the legislature has expressly given its consent to the
suit).  See Fed. Sign, 951 S.W.2d
at 405; Serv. Employment, 163 S.W.3d at 149.  AImmunity from liability is an affirmative defense, while immunity from
suit deprives a court of subject matter jurisdiction.@  Miranda, 133 S.W.3d at
224.








Although a governmental
entity waives immunity from liability when it contracts with private citizens,
its immunity from suit is not waived by its merely entering into a
contract.  See Catalina Dev., Inc. v.
County of El Paso, 121 S.W.3d 704, 705 (Tex. 2003); Gen. Servs. Comm=n v. Little‑Tex Insulation Co., 39
S.W.3d 591, 594 (Tex. 2001).  Express
legislative consent is required to show that immunity from a breach of contract
suit has been waived.  See Travis
County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002); Serv.
Employment, 163 S.W.3d at 149. 
Consent to suit must be expressed by clear and unambiguous
language.  Tex. Gov=t Code Ann. ' 311.034 (Vernon Supp. 2006); Pelzel, 77 S.W.3d at 248.








Here, the Singers do not
identify any statute as waiving the City=s immunity from suit for breach of its contract with the Singers.[4]
 Accordingly, relying on the Texas
Constitution and A&M, the Singers contend that the City is not
immune from suit in this instance because the agreement between the parties
was, in essence, a settlement of an eminent domain claim, for which the City
has no immunity by virtue of the Texas Constitution.[5]


Texas A&M University-Kingsville v. Lawson

In A&M,
the Texas Supreme Court held that a government entity that agrees to settle a
claim for which it is not immune is not later entitled to immunity from suit in
an action alleging a breach of the settlement agreement.  A&M, 87 S.W.3d at 518.  Lawson, a professor at the University, sued
the University after it terminated his employment, claiming violations of the
Whistleblower Act; violations of his constitutional rights to freedom of
association, expression, petition, and privacy; and interference with business
relations.  Id. at 518-19.  The trial court granted the University=s plea to the jurisdiction on all claims except the Whistleblower Act
claim; Lawson then agreed to release his claims and dismiss the case with
prejudice in exchange for $62,000.  Id.
at 519.  The settlement agreement also
provided that the University would respond to employment inquiries about Lawson
in a specified manner.  Id.








Lawson later filed a suit
against the University alleging breach of the settlement agreement for failure
to respond to employment inquiries in accordance with the settlement
agreement.  Id.  The University filed a plea to the
jurisdiction, which the trial court denied. 
Id.  On appeal, the
University contended, in part, that it was immune from the second suit because
there is no waiver of sovereign immunity for breach of contract.  Id.

The supreme court held that

when
a governmental entity is exposed to suit because of a waiver of
immunity, it cannot nullify that waiver by settling the claim with an agreement
on which it cannot be sued.  The
government cannot recover waived immunity by settling without defeating the
purpose of the waiver in the first place. 
Such a rule would limit settlement agreements with the government to
those fully performed before dismissal of the lawsuit because any executory
provision could not thereafter be enforced.

. . . .

. . . Once the Legislature has decided to waive
immunity for a class of claims, the inclusion of settlements within the waiver
is consistent with that decision.

 








Id. at 521-22
(emphasis added).  Thus, the court
determined that a governmental entity that has been exposed to a claim
for which liability from suit has been waived cannot regain that immunity by
entering into a settlement of that claim. 
In other words, once a governmental entity=s immunity from suit has been waived as to a claim, it is waived for
all purposes until the ultimate resolution of that claim.  The focus on Lawson therefore is the type
of claim settled by the entity.

Eminent Domain

Article I, section 17 of the
Texas Constitution provides that 

[n]o
person=s
property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person;
and, when taken, except for the use of the State, such compensation shall be
first made, or secured by a deposit of money.

 

Tex. Const. art. I, ' 17.  This provision does not grant power to the
government but limits the inherent sovereign power of eminent domain by
imposing the requirements that the government take property only for Apublic use@ and pay Aadequate compensation@ when doing so.  Id.; McInnis
v. Brown County Water Improvement Dist. No. 1, 41 S.W.2d 741, 744 (Tex.
Civ. App.CAustin 1931,
writ ref=d); Whittington v. City of Austin, 174 S.W.3d 889, 896 (Tex.
App.CAustin 2005, pet. denied).  A>Eminent domain= refers to >[t]he power to take private property for public use by the state,
municipalities, and private persons or corporations authorized to exercise
functions of state power.=@  Taub v. Aquila Sw. Pipeline
Corp., 93 S.W.3d 451, 456 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (quoting Black=s Law Dictionary 523 (6th ed. 1990)).








A municipality may exercise
the right of eminent domain to acquire property for the purpose of Aextending . . . any alley, street or other roadway.@  Tex. Loc. Gov=t Code Ann. ' 251.001(a)(4) (Vernon 2005).  A
municipality exercises the power of eminent domain by the process known as
condemnation.  City of Houston v. Boyle,
148 S.W.3d 171, 178 (Tex. App.CHouston [1st Dist.] 2004, no pet.). 
Condemnation is a process created entirely by statute.  Duncan v. Calhoun County Navigation Dist.,
28 S.W.3d 707, 709 (Tex. App.CCorpus Christi 2000, pet. denied); see Tex. Prop. Code Ann. '' 21.011-.065 (Vernon 2000, 2004 & Supp. 2006).  It is the procedure by which a sovereign
exercises its right to take property of a private owner for public use, without
consent, upon the payment of just compensation. 
Boyle, 148 S.W.3d at 178; Duncan, 28 S.W.3d at 709; A.C.
Aukerman Co. v. State, 902 S.W.2d 576, 577 (Tex. App.CHouston [1st Dist.] 1995, writ denied).








The property code describes
the procedure for instituting an eminent domain proceeding in Texas.  Section 21.012(a) provides that A[i]f . . . a political subdivision of this state . . . wants to
acquire real property for public use but is unable to agree with the owner
of the property on the amount of damages, the condemning entity may begin a
condemnation proceeding by filing a petition in the proper court.@  Tex. Prop. Code Ann. '21.012(a) (Vernon 2004) (emphasis added).  In other words, a genuine effort to purchase
the land by agreement between the parties, and the failure to do so, is a
condition precedent to instituting eminent domain proceedings.  Weingarten Realty Investors v. Albertson=s, Inc., 66 F. Supp. 2d 825, 842-43
(S.D. Tex. 1999), aff=d, 234 F.3d 28 (5th Cir. 2000).[6]  Generally, the government compensates the
owner before appropriating property, either by paying a mutually agreed price
or by paying the value as determined in a statutory condemnation
proceeding.  Westgate, Ltd. v. State,
843 S.W.2d 448, 452 (Tex. 1992).








If the owner and municipality
cannot agree on the amount of adequate compensation, the municipality begins
condemnation proceedings by filing a petition describing the property to be
condemned, stating the purpose for which the municipality intends to use the
property, stating the name of the owner of the property if the owner is known,
and stating that the municipality and the property owner are unable to agree on
the damages.  Tex. Prop. Code Ann. ' 21.012; see Duncan, 28 S.W.3d at 709.  The trial court then appoints three special
commissioners who assess damages, i.e., their opinion of the value of the land;
they do not decide whether the municipality has the right to condemn the
property in the first place.  Tex. Prop. Code Ann. ' 21.014(a) (Vernon 2004), ' 21.042 (Vernon Supp. 2006); Duncan, 28 S.W.3d at 709.

Either the municipality or
the owner may object to the special commissioners= award.  Tex. Prop. Code Ann. ' 21.018(a) (Vernon 2004).  Upon
the filing of such objections, the award is vacated and the parties may Atry the case in the same manner as other civil causes@ in the court in which the municipality filed its original petition
for condemnation.  Id. ' 21.018(b); Duncan, 28 S.W.3d at 709.  The municipality must prove that all of the
requirements of the condemnation statute have been satisfied and that it is
required to take the property by eminent domain; the owner has the burden of
proving the amount of adequate compensation. 
Religious of the Sacred Heart of Tex. v. City of Houston, 836
S.W.2d 606, 613 (Tex. 1992); Duncan, 28 S.W.3d at 709.













An agreement to convey
property to a governmental authority for a public purpose has the same effect
as a formal condemnation proceeding.  See
State v. Brewer, 141 Tex. 1, 169 S.W.2d 468, 471 (1943) (AThe conveyance of land for a public purpose will ordinarily vest in
the grantee the same rights as though the land had been acquired by condemnation
proceedings.@); Howard
v. County of Nolan, 319 S.W.2d 947, 950 (Tex. Civ. App.CEastland 1959, no writ).[7]  A[W]henever the owner accepts a sum of money as compensation for land
for such a use, his property, to the extent of the taking, is expropriated to
the use of the public.@  Howard, 319 S.W.2d at 950.  When property is acquired by agreement and
there is no commissioner=s award as a
result of condemnation proceedings, a taking (i.e., a completed appropriation
for public use) occurs upon the payment=s being made and accepted by the landowner.  Howard, 319 S.W.2d at 950; see Benefit
Realty Corp. v. City of Carrollton, 141 S.W.3d 346, 349-51 (Tex. App.CDallas 2004, pet. denied) (holding that church=s conveyance of property to City was involuntary when City did not
initiate condemnation proceedings against church but instead Apassed a resolution authorizing the City to acquire all parcels of
land necessary to make public improvements to Hebron Parkway by making an offer
for the fair market value of the parcels or, if negotiations with the owners
failed, to institute eminent domain proceedings@).  A completed appropriation
for public use may also be effectuated upon the actual passage of title to the
governmental entity.  Weingarten,
66 F. Supp. 2d at 844; see Steele v. City of Houston, 603 S.W.2d 786,
789 (Tex. 1980) (AProperty
that is taken is transferred from one owner to another.@).

Analysis

In their first amended
petition, the Singers pled that

[the] court
has jurisdiction over this case because governmental immunity does not protect
the [C]ity.  By entering into the
settlement agreement/contract, the City waived immunity from liability.  The settlement agreement/contract at issue
was to settle an eminent domain case, for which the City did not have
immunity.  Under the Texas Supreme Court=s decision in [A&M], the City cannot claim immunity from
suit on an agreement to resolve an action for which no immunity exists. 

In furtherance of this contention, the Singers
pled that their agreement with the City was intended to settle the Singers= claim for adequate compensation for the City=s acquisition of their property for a public purpose.  The pleadings also allege that Mr. Singer
understood that the City would acquire the property by eminent domain if
necessary.  They characterize the City=s initial offer as an Aoffer to avoid eminent domain.@  They also describe the Singers= counteroffer as an offer to Adonate the requested land@ in exchange for the improvements. 








It is clear that, even though
the City had not yet instituted condemnation proceedings against the Singers in
court, it intentionally acquired the Singers= land for the public purpose of extending a road,[8]
for which a municipality is statutorily authorized to institute condemnation
proceedings, Tex. Loc. Gov=t Code Ann. ' 251.001(a)(4), and it had performed a condition precedent to
instituting eminent domain proceedings in courtCnegotiating with the Singers for adequate compensation.  The City and the Singers had even already
agreed on a per acre value of $165,000, as would be done in a condemnation
suit.  Although the City=s first letter to the Singers assumes that they would voluntarily
convey the property, it also makes it clear that the project of extending the
road was already well under way.  Mr.
Singer thought that if the Singers were not able to negotiate an agreement with
the City, the City would institute condemnation proceedings to acquire the
land.  Thus, if the Singers had not
reached a settlement agreement with the City, the City would have had to
institute eminent domain proceedings against them to acquire the land.








The focus of an eminent
domain proceedingCthe amount
of compensation the Singers would be entitled to in exchange for the City=s acquisition of their propertyCwas also the focus of the Singers= negotiations with the City.  In
lieu of forcing the City to institute condemnation proceedings, in which the
Singers would have a claim against the City for market value of the land
(recited in the deed to be $165,000 per acre) and for which the City would not
be immune,[9]
the Singers entered into a settlement agreement with the City under which the
City would make improvements to the Singers= remaining property according to an agreed upon standard, reimburse
the Singers up to $10,000 cash, and keep the then-existing entrance open until
the new entrance was built.  Thus, as in A&M,
the CityCa governmental entityCand the landowners settled a claim or suit for which the governmental
entity=s immunity is waived; thus, enforcement of that settlement necessarily
is included within that initial waiver.  A&M,
87 S.W.3d at 521.  Obviously, the dissent=s bold conclusion that A&M does not apply is wrongCthe City exposed itself to liability and suit by its threat of eminent
domain proceedings, and its agreement to compensate the Singers for their
property settled a claim already asserted by the City against the Singers.  See Dissenting Op. at 2-3.








We conclude that the City
could not create immunity from suit for the Singers= claim for adequate compensation by contracting to purchase their
property at an agreed upon valuation in fulfillment of the condition precedent
to filing an eminent domain proceeding in court as set forth in the property
code.  See A&M, 87 S.W.3d at
522-23; see also Tex. Prop. Code
Ann. '
21.012(a).  Accordingly, we hold that the
agreement between the City and the Singers was a settlement of an eminent
domain proceeding in which the Singers would have a claim against the City for
adequate compensation for the City=s acquisition of their property, and for which the City would not be
immune.  See Tex. Const. art. I, ' 17; A&M, 87 S.W.3d at 521. 
Therefore, the City is likewise not immune to this subsequent action by
the Singers for breach of that settlement agreement.  See A&M, 87 S.W.3d at 521.








The dissent argues that
because the Singers voluntarily entered into an agreement with the City, they
should not be allowed to now assert that the City has taken or attempted to
take their property by eminent domain.  See
Dissenting Op. at 7.  But the dissent
fails to recognize that the only way the City could avoid such a claim
was by settling with the Singers for adequate compensation before
instituting an eminent domain proceeding. 
Were we to hold that the City=s actions shielded it from immunity from suit (thereby ignoring the
supreme court=s holding
and logic in A&M), the City would be able to avoid paying
compensation for property altogether by entering into agreements with property
owners without ever intending to pay the promised compensation and yet still be
shielded from suit.  Here, the City
exposed itself to this claim by determining to obtain the Singers= land for the public purpose of extending a road and by negotiating
with the Singers for an appropriate amount of damages under section 21.012(a)
of the property code.  See Tex. Prop. Code Ann. ' 21.012(a).  Accordingly, we
disagree with the dissent=s
characterization of the Singers= agreement with the City as a mere contract between citizens and a
government entity rather than a settlement agreement of a claim for which the
City would not be immune from suit in the first place.  See Dissenting Op. at 7.

We overrule the City=s sole issue.

Conclusion

Having
overruled the City=s sole
issue, we affirm the trial court=s denial of the City=s plea to the jurisdiction.

 

TERRIE LIVINGSTON                                                                 JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

CAYCE,
C.J. filed a dissenting opinion.

 

DELIVERED:
August 2, 2007











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-322-CV

 

 

CITY OF CARROLLTON                                                         APPELLANT

 

                                                   V.

 

CRAIG B. SINGER AND CAROL G. SINGER                               APPELLEES

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

The majority holds that by
negotiating a contract for the purchase of property a municipality waives
sovereign immunity from suit for breach of the contract.  The Supreme Court of Texas, however, has
repeatedly rejected such judicially created waiver-by-conduct exceptions to the
sovereign immunity doctrine in the contract-claims context.  Because the majority=s holding departs from the established jurisprudence of our state, I
respectfully dissent. 








The Supreme Court of Texas
has held that a governmental entity by entering into a contract waives immunity
from liability for breach of the contract but does not, merely by
entering into a contract, waive immunity from suit.[1]  The
supreme court has also rejected the view that immunity from suit is waived
merely by accepting the benefits of a contract.[2]  The majority=s holding that the City has waived its immunity from suit by
negotiating a contract with the Singers for the purchase of their property is
in direct conflict with these supreme court rulings and defeats many of the
policies underlying the sovereign immunity doctrine.[3]








The majority=s reliance on Texas A&M University-Kingsville v. Lawson[4] to create a waiver of immunity based on the
City=s contract with the Singers is misplaced.  In Lawson, the University entered into
a settlement agreement with Lawson to settle a lawsuit filed by Lawson in which
he alleged claims for which the University had no immunity.[5] 
Lawson later sued the University for breach of the settlement
agreement.  In response, the University
filed a plea to the jurisdiction, contending that it was immune from the breach
of contract suit because there is no waiver of sovereign immunity for breach of
contract.[6]  The trial court denied the plea, and the
court of appeals affirmed.[7]


In affirming the lower courts= denial of the University=s plea to jurisdiction, the Supreme Court of Texas held,

We agree
with the trial court that when a governmental entity is exposed to suit because
of a waiver of immunity, it cannot nullify that waiver by settling the claim
with an agreement on which it cannot be sued. 
The government cannot recover waived immunity by settling without
defeating the purpose of the waiver in the first place. . . .  We do not think the Legislature intended by
waiving the bar of immunity for claims under the Whistleblower Act that
settlements would be prevented or delayed by a revival of the bar in the form
of immunity from suit for breach of settlement agreements.  While it is certainly true . . . that a suit
for breach of a settlement agreement is separate and apart from the suit on the
settled claim, enforcement of a settlement of a liability for which immunity is
waived should not be barred by immunity.[8]








Lawson clearly has no application to the facts of this case.  Unlike the University in Lawson, the
City was not exposed to suit because of a waiver of immunity when it entered
into its agreement with the Singers.  At
the time the agreement was made, the Singers had no cognizable claim under Texas
law that could be brought against the City based on their negotiations with the
City, and they had not filed or threatened to file a suit alleging a claim
against the City for which the City=s immunity is waived.

The majority opines, however,
that Lawson governs this case because the City exposed itself to suit by
Aits threat of eminent domain proceedings,@ and that the parties= agreement settled an eminent domain claim in which Athe Singers would have a claim against the City for adequate
compensation.@[9]  There are three obvious problems with this
reasoning.  

First, the City=s alleged Athreat@ of eminent domain proceedings did not expose the City to a suit for
adequate compensation because the Singers could not have sued the City based on
such a threat.  Under the statutes and
case law discussed in the majority opinion,[10] the
Singers would have had an actionable claim against the City for adequate
compensation if, and only if, the City actually commenced eminent domain
proceedings to take the propertyCwhich the City did not do in this case.  








Second, there is no evidence
that the parties intended that the agreement settle any alleged claims against
the City or the Singers.  In construing a
contract, the primary concern of this court is to ascertain the true intention
of the parties as expressed in the contract.[11]  The plain and unambiguous language of the
agreement in this case evidences an intent that the Singers convey their
property to the City in consideration for the City=s promise to make improvements to the Singers= remaining property and reimburse the Singers for out-of-pocket
expenses.  There is nothing in the
wording of the agreement that even remotely demonstrates an intent of either party
to settle an alleged eminent domain or adequate compensation claim.








Third, the Singers had no
adequate compensation claim to settle when they entered into the agreement
because they had already reached an agreement with the City on the amount of
compensation to be paid for the property. 
Before initiating an eminent domain proceeding, a municipality must
first attempt to purchase the property by agreement.[12]  When
the municipality purchases the property by agreement, there is no condemnation
or Ataking@ of the
property by the power of eminent domain.[13]  In such a case, the person from whom the
property was purchased has no justiciable claim for adequate compensation under
the condemnation statutes or the takings clause.[14] 








In the final analysis, the
majority acknowledges that its purpose in construing the agreement in this case
as a Asettlement agreement@ to bring it under Lawson is to prevent the City from accepting
the benefits of the agreement while enjoying the protection of immunity.[15]  As
desirable as this outcome may seem, however, it is not supported by the law or
the facts.  The City was not exposed to
suit because of a waiver of immunity when it entered the agreement, and no
actionable claim for which the City could be sued because of a waiver of
immunity was settled by the agreement. 
Thus, there is no basis  for the
majority=s conclusion that the agreement was an attempt by the City to Acreate immunity@ from a
claim to which the City was exposed because of a waiver of immunity.








Moreover, by characterizing
the agreement as settling an eminent domain claim, the majority has ignored the
distinction between a municipality=s power to purchase property by contract and to take property by
eminent domain.[16]  The evidence conclusively shows that the City
was acting within a color of right under contract when it negotiated the
agreement with the Singers to purchase their property and not under its
eminent domain powers.  The Singers were
not forced to negotiate with the City. 
They could have refused to negotiate, insisted that the City take the
property, if at all, by eminent domain, and asserted a claim for adequate compensation.  Having agreed to convey their property to the
City voluntarily, however, the Singers should not be allowed to now assert that
the City has taken or attempted to take their property against their will by eminent
domain.[17]  

For all of these reasons, I would sustain the City=s sole issue, reverse the trial court=s denial of the City=s plea to the jurisdiction, and render judgment dismissing the Singers= suit against the City.

 

 

 

JOHN CAYCE

CHIEF JUSTICE

 

DELIVERED:  August 2, 2007

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











[1]No
one document evidences the agreement between the parties, but the City filed
and recorded the deeds attached to the Singers=
letter outlining their understanding of the agreement.  The City also expressly confirmed its
agreement to construct the new entrance and reimburse the Singers up to $10,000
in a subsequent letter.





[2]A
contemporaneously executed Slope Easement, which was for the purpose of
constructing and maintaining embankments to the road extension, contained
substantially similar language. 





[3]The
City has not disputed this allegation in the Singers=
pleadings; we adopt it as true for purposes of reviewing the plea to the
jurisdiction.  See Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004).





[4]See Tex. Loc. Gov=t Code Ann. '
271.152 (waiving local governmental entity=s sovereign immunity from
suit for breach of Acontract
subject to this subchapter@), '
271.151(2) (defining A[c]ontract
subject to this subchapter@ as Aa
written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity that is properly executed on
behalf of the local governmental entity@) (Vernon 2005) (both
effective September 1, 2005).  Because
the Singers have never alleged that section 271.152 waives the City=s
immunity in this case, we express no opinion regarding its applicability.  See, e.g., Tex. Ass=n of
Bus., 852 S.W.2d at 446 (stating well-established rule requiring pleader
to allege facts affirmatively demonstrating the trial court=s
jurisdiction); Pakdimounivong v. City of Arlington, 219 S.W.3d 401, 407
(Tex. App.CFort
Worth 2006, pet. denied).





[5]The
Singers do not claim that the City waived immunity from suit simply by
contracting with them; rather, they contend that the City was never immune from
suit for their claims and could not create immunity by contracting with them to
purchase the property instead of instituting eminent domain proceedings.  See A&M, 87 S.W.3d at 521-22; cf.
Gen. Servs. Comm=n, 39
S.W.3d at 594 (A[T]he
State does not waive immunity from suit simply by contracting with a private
person.@).





[6]Although
we are not bound by federal authority, we may rely on it as persuasive.  Davenport v. Garcia, 834 S.W.2d 4, 20
(Tex. 1992) (orig. proceeding); Westchester Fire Ins. Co. v. Admiral Ins. Co.,
152 S.W.3d 172, 183 (Tex. App.CFort Worth 2004, pet. filed)
(op. on reh=g).





[7]In Brewer
and Howard, the landowners obtained consent to sue pursuant to
legislative resolutions.  Brewer,
169 S.W.2d at 468; Howard, 319 S.W.2d at 948.  In those cases, however, the landowners were
not suing to recover compensation due under the agreement to convey their land
to the government; instead, they were suing in tort to recover for damages to
their remaining property due to the subsequent construction on the land
conveyed to the government.  Brewer,
169 S.W.2d at 468; Howard, 319 S.W.2d at 948.





[8]See Tex. Civ. Prac. & Rem. Code Ann. '
101.0215(a)(3), (b)-(c) (Vernon 2005). 
We note that if the City had attempted to argue that it acquired the
property for any purpose other than a public purpose, its actions could be
considered proprietary, for which its immunity from suit is waived.  See City of Weslaco v. Borne, 210
S.W.3d 782, 790 (Tex. App.CCorpus Christi 2006, pet.
denied) (op. on reh=g)
(citing Gates v. City of Dallas, 704 S.W.2d 737, 738-39 (Tex. 1986)); see
also Tooke, 197 S.W.3d at 343-44 (noting that the supreme court has Anever
held that this same distinction [between governmental and proprietary
functions] determines whether immunity from suit is waived for breach of
contract claims,@ as
opposed to tort claims, but determining that it did not need to decide the
issue because the city in that case was engaging in a governmental function).





[9]See Tex. Prop. Code Ann. '
21.018(b); Duncan, 28 S.W.3d at 709; State v. Sledge, 36 S.W.3d
152, 156 (Tex. App.CHouston
[1st Dist.] 2000, pet. denied); see also Tex. Const. art. I, ' 17.





[1]Gen.
Servs. Comm=n v.
Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001).





[2]Tex.
Natural Res. Conservation Comm=n v. IT-Davy, 74
S.W.3d 849, 854-58 (Tex. 2002); Little-Tex., 39 S.W.3d at 594.





[3]IT-Davy, 74
S.W.3d at 857 (ACreating
a waiver-by-conduct exception [to the sovereign immunity doctrine] would force
the State to expend its resources to litigate the waiver-by-conduct issue
before enjoying sovereign immunity=s protectionsCand
this would defeat many of the doctrine=s underlying policies.@).





[4]87 S.W.3d 518 (Tex.
2002).





[5]Id. at
518. 





[6]Id. at
518-19.





[7]Id.





[8]Id. at
521.





[9]Maj. Op. at 18-19
(emphasis supplied).  The sovereign
immunity doctrine does not shield a municipality from an action for
compensation when a taking is attempted by eminent domain.  Steele v. City of Houston, 603 S.W.2d
786, 791 (Tex. 1980). 





[10]See Maj.
Op. at 11-16, 19 and authorities discussed therein. 





[11]E.g.,
Dewitt County Elec. Co-op v. Parks, 1 S.W.3d 96, 100-01 (Tex.
1999); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Boland v.
Natural Gas Pipeline Co. of Am., 816 S.W.2d 843, 845 (Tex. App.CFort
Worth 1991, no writ).





[12]Tex.
Prop. Code Ann. '
21.012(a) (Vernon 2003) (providing that Aa condemning entity may begin
a condemnation proceeding@ if
the entity Ais
unable to agree with the owner@ on a purchase price).





[13]See
Little-Tex, 39 S.W.3d at 598-99; State v. Steck Co.,
236 S.W.2d 866, 869 (Tex. Civ. App.CAustin 1951, writ ref=d).





[14]This does not mean
that the Singers waived their right to recover adequate compensation for the
property in the event the City instituted eminent domain proceedings.  Had the Singers refused to voluntarily convey
the property to the City and the City attempted to take the property by eminent
domain, nothing in the Singers= agreement with the City
would have precluded them from pursuing a claim for adequate compensation in a
subsequent condemnation proceeding. 





[15]Maj. Op. at 19-20 (AWere
we to hold that the City=s
actions shielded it from immunity from suit (thereby ignoring the supreme court=s
holding and logic in A&M), the City would be able to avoid paying
compensation for property altogether by entering into agreements with property
owners without ever intending to pay the promised compensation and yet still be
shielded from suit.A).  But see IT-Davy, 74 S.W.3d at 857 (ABecause
we have consistently held that only the Legislature can waive sovereign
immunity from suit, allowing other governmental entities to waive immunity by
conduct that includes accepting benefits under a contract would be
fundamentally inconsistent with our established jurisprudence.@).





[16]Little-Tex, 39
S.W.3d at 599; see, e.g., Tex.
Transp. Code Ann. '
314.011 (Vernon 1999) (AThe
governing body of a municipality may purchase or condemn property to lay
out, construct, improve, or extend any highway within its boundaries.@); Osborne
v. Keith, 142 Tex. 262, 177 S.W.2d 198, 201 (1944) (noting that
governmental entities may obtain land and construction materials by private
contract or condemnation proceedings); Benefit Realty Corp. v. City of
Carrollton, 141 S.W.3d 346, 349 (Tex. App.CDallas
2004, pet. denied) (noting that the defendant obtained the property by
agreement, rather than condemnation).





[17]See
Steck, 236 S.W.2d at 869.















 [JH1]

Majority by Justice
Livingston; Dissent by Chief Justice Cayce