Opinion issued January 14, 2010












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-01005-CV




THE CITY OF HOUSTON, Appellant

V.

SHERIF CHEMAM AND DIANN CHEMAM, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2008-13762




MEMORANDUM OPINION

          Appellant, the City of Houston (“the City”), appeals the denial of its plea to the
jurisdiction in the suit seeking a determination of rights under the Declaratory
Judgment Act, monetary damages, and attorney’s fees under claims for detrimental
reliance, estoppel, negligence, and violation of the takings clause brought against it
by appellees, Sherif and Diann Chemam. In seven issues, the City argues that the trial
court erred in denying its plea to the jurisdiction because: (1) it is immune from suit
for damages waived under equitable theories of recovery; (2) the trial court does not
have jurisdiction to award damages against the City for violations of state
constitutional rights; (3) the uncontroverted evidence showed that there was no
estoppel claim, and, therefore, the Chemams’ pleadings failed to establish the trial
court’s subject matter jurisdiction over the cause; (4) the City is immune from suit for
intentional torts that do not arise from the use of a motor vehicle; (5) the trial court
did not have jurisdiction over the takings claim against the City; (6) the Chemams’
pleading failed to establish the trial court’s jurisdiction under the Uniform
Declaratory Judgments Act (UDJA) because the allegations underlying their current
claims duplicate already pending claims, their claims fail to arise under a deed, will,
or written contract, and damages are sought; and (7) the trial court does not have
jurisdiction to award attorney’s fees under the UDJA when no UDJA cause is
properly alleged.
          We reverse and render judgment dismissing the Chemams’ claims for lack of
subject matter jurisdiction.
 
Background
          The Chemams own real property (the “property”) located at 8 Rollingwood,
Houston, Texas. The property is on the corner of Rollingwood and Long Point Road
in the City of Houston. The Chemams have owned the property since 1992. The
property is bordered along Long Point Road and Rollingwood by a cinder block wall.
          In 1999, the Chemams learned from a City engineer that improvements were
planned along Long Point Road. The Chemams’ cinder block wall began to show
signs of disrepair; however, believing that Long Point Road would be widened, the
Chemams decided to wait to improve the condition of their wall because they
believed that the wall might have to be moved.
          In late 2005, the Chemams learned that the City had joined with the Memorial
TIRZ


 and decided to widen Bunker Hill and improve the intersection of Bunker Hill,
Long Point Road, and Rollingwood.
          Due to the disrepair of their cinder block wall, on October 10, 2006, the
Chemams received a Violation Notice from the City’s Neighborhood Protection
Corps of the Houston Police Department for violations of the City’s Code of
Ordinances requiring them to either tear down or improve the condition of the wall.


 
The Chemams began construction on a new wall in the same location and on the same
foundation as the original wall without seeking a building permit.
          When the construction of the new wall was near completion, the City received
a report that the fence construction was taking place without a permit. In response
to a visit by a City inspector, the Chemams submitted a Residential Building Permit
Application (the “Application”) to the City on November 16, 2006 containing Diann
Chemam’s sworn representation that the rebuilt fence did not violate any of the deed
restrictions. The affidavit signed by Diann Chemam also stated:
I understand, acknowledge and agree that (1) if any statement made
herein is false or misleading, then any permit issued hereunder shall be
void with the same force and effect as if it had never been issued, and
(2) I may be required by the City Building Official to remove any
improvements erected pursuant to the void permit at my sole cost and
expense.
 
The City initially rejected the Application because it did not include plans and a
property site plan and survey. The Chemams’ engineer then sent the plans and survey
to the City showing the location of the cinder block fence to be on the Property’s
southern property line and not in the City’s right-of-way. The City approved the
Chemams’ permit application and construction was completed on the new cinder
block fence.
          In February of 2007, the project consultant for Memorial TIRZ informed the
Chemams that their newly-built wall extended 2.6 feet beyond the boundary of the
Chemams’ property and it would have to be removed at their expense. The Chemams
filed a claim with the City arguing that they should not be held responsible for the
cost of removing the wall. The City denied their claim, so the Chemams filed suit in
the 113th District Court of Harris County.
          On April 9, 2008, the City filed special exceptions arguing that the Chemams’
claim for detrimental reliance is an element of promissory estoppel and that the
Chemams failed to state a claim for promissory estoppel. The City also argued that
it was immune from suit on the equitable estoppel claim because it was engaged in
a governmental function. On May 13, 2009, the trial court signed an order sustaining
the City’s special exceptions that the Chemams failed to state a detrimental reliance
claim or promissory estoppel claim and that the City was immune from suit for
equitable and promissory estoppel. The Chemams filed their First Amended Petition
on June 25, 2008 repleading their causes of action for detrimental reliance and
estoppel, including an argument that the City was estopped from asserting immunity
against those claims.
          On August 1, 2008, the City filed its plea to the jurisdiction arguing that it was
immune from suit for damages in detrimental reliance, promissory estoppel, and
equitable estoppel claims and that the Chemams failed to plead a selective
enforcement claim. On August 11, 2008, the Chemams responded that the City
should be estopped from invoking sovereign immunity and that they had stated a
cause of action under the takings clause of the United States and Texas Constitutions,
and they alternatively requested the opportunity to amend their pleadings to cure any
jurisdiction defects. The trial court held a hearing on the City’s plea to the
jurisdiction on August 11, 2008.
          On August 14, 2008, the Chemams filed their Second Amended Petition in the
trial court. The Chemams pleaded a cause of action for detrimental reliance on the
City’s representations that there was no firm information with regard to the location
of the right-of-way and that the Chemams were required to repair their fence. They
also argue that they relied on the permits and inspections allowing them to rebuild the
fence on the existing foundation. Within the detrimental reliance cause, the petition
stated, “On information and belief, [the Chemams] allege a selective enforcement
action against them in which they have been intentionally and knowingly treated
differently than similarly situated citizens which additionally confirms their justified
detrimental reliance upon the actions of the [City].”
          The Chemams’ estoppel cause of action alleged that they “made repeated
requests to the City to determine the alignment of the right-of-way and to
communicate with them with regard to the necessity for removing or rebuilding the
wall in its existing location,” that the City “refused to give them any information
whatsoever,” and that it eventually issued a permit allowing the Chemams to rebuild
their wall. They argue that these actions constituted an “implied and contractual
promise by the City (the building permit) that they would undertake no action that
would harm, impact or damage” the Chemams and that the City “should be estopped
from requiring [them] to remove the wall at their expense.” 
          In their second amended petition the Chemams also alleged for the first time
a negligence cause of action, claiming that “The City’s actions in deliberately
misleading and or refusing to disclose the details of the right of way alignment while
at the same time insisting that [the Chemams] replace the fence and approving the
replacement in a position that the City knew would necessitate its subsequent and
imminent removal breaches the City’s duty to deal fairly with its citizens’ . . .
valuable property rights.” They also alleged that the City breached its duty “to
coordinate actions between its various departments so as to serve and benefit all its
citizens and to not take advantage of its powers of law enforcement and superior
knowledge of its plans.”
          The Chemams also alleged that the actions of the City “constitute an
unconstitutional taking by the City . . . in violation of the rights guaranteed to them
under the United States and Texas Constitutions.” Finally, the Chemams added a
cause of action under the Texas Declaratory Judgment Act for a determination of the
parties’ rights and an interpretation of the effect of the Texas Constitution and “and
any other applicable statutes as to the City’s right to remove the wall under these
circumstances without just compensation.”
          The Chemams sought damages in the amount of $17,000 based on detrimental
reliance for the cost they have already incurred from rebuilding the wall and $25,000
based on detrimental reliance and estoppel for the cost that they will incur if they
have to remove and rebuild the foundation and the wall. In the alternative, they
sought damages of $41,000 based on the City’s negligent conduct. In addition, the
Chemams sought attorney’s fees in the amount of $10,000 under the Texas
Declaratory Judgment Act.
          On August 27, 2008, the City supplemented its plea to the jurisdiction to
address the Chemams’ claim for negligence, unconstitutional taking, and plea for
declaratory relief. On November 21, 2008, the trial court denied the City’s plea to the
jurisdiction. This interlocutory appeal followed. See Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(8) (Vernon 2008).
Standard of Review
          A plea to the jurisdiction challenges the trial court’s subject matter jurisdiction
to hear the case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
Subject matter jurisdiction is essential to the authority of a court to decide a case and
is never presumed. Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
443–44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively
demonstrating that the trial court has subject matter jurisdiction. Id. at 446.
          The existence of subject matter jurisdiction is a question of law. State Dep’t
of Hwys. & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002). Therefore,
we review the trial court’s ruling on a plea to the jurisdiction de novo. Id. When a
plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court
must consider relevant evidence submitted by the parties. Tex. Dep’t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004). If the evidence creates a fact
question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction,
and the fact issue will be resolved by the fact-finder; however, if the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea as a matter of law. Id. at 227–28.
          In deciding a plea to the jurisdiction, a court may not consider the merits of the
case, but only the plaintiff’s pleadings and the evidence pertinent to the jurisdictional
inquiry. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). In
conducting our review, we take as true all evidence favorable to the nonmovant and
indulge every reasonable inference and resolve any doubts in the nonmovant’s favor. 
Miranda, 133 S.W.3d at 228. If the pleadings do not affirmatively demonstrate the
trial court’s jurisdiction but, likewise, do not demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be
afforded the opportunity to amend. Miranda, 133 S.W.3d at 226–27. However, if the
pleadings affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiff an opportunity to amend. 
Id. at 227.
Equitable Claims
          In its first issue, the City argues that is immune from suit for damages under the
Chemams’ equitable claims for detrimental reliance and estoppel. In its third issue,
the City argues that the Chemams failed to invoke the trial court’s jurisdiction
because they failed to allege any fact supporting an equitable estoppel cause.



          Governmental immunity has two components—immunity from liability and
immunity from suit. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). A
unit of state government is immune from suit and liability unless the State consents. 
Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Immunity from suit
defeats a trial court’s subject matter jurisdiction and is properly asserted in a plea to
the jurisdiction. Id. at 639. Immunity from liability protects the State from money
judgments even if the Legislature has expressly given consent to sue. Tex. Natural
Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002). The Texas
Supreme Court has long recognized that it is the Legislature’s sole province to waive
or abrogate sovereign immunity. Tooke, 197 S.W.3d at 332. A plaintiff who sues the
State must establish the State’s consent to suit; otherwise, sovereign immunity from
suit defeats a trial court’s subject matter jurisdiction. IT-Davy, 74 S.W.3d at 855.
          Generally, a city is immune from suit for its governmental actions. Tooke, 197
S.W.3d at 343. Street construction and design is classified as a governmental
function for which a municipality is immune from suit except where immunity has
been waived under the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code Ann.
§ 101.0215(a)(3) (Vernon 2005); see also id. § 101.021 (Vernon 2005). The issuance
and denial of permits is likewise classified as a governmental function. Maguire Oil
Co. v. City of Houston, 69 S.W.3d 350, 364 (Tex. App.—Texarkana 2002, pet.
denied); see City of Austin v. Teague, 570 S.W.2d 389, 393 (Tex.1978); Trevino &
Gonzalez Co. v. R.F. Muller Co., 949 S.W.2d 39, 42 (Tex. App.—San Antonio 1997,
no writ). Furthermore, Texas courts have held that a municipality is immune from
suit for equitable estoppel. Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589,
59496 (Tex. App.Austin 1991, writ denied); Univ. of Tex. Sys. v. Courtney, 946
S.W.2d 464, 468 (Tex. App.—Fort Worth 1997, writ denied).
          The Chemams, citing Maguire Oil, argue that the City is estopped from
invoking sovereign immunity. However, Maguire Oil is distinguishable from the
present case. It was not an appeal from a plea to the jurisdiction; rather, the appeal
dealt with a granted summary judgment in favor of the city on Maguire Oil’s
negligent misrepresentation and promissory estoppel claims under the doctrine of
sovereign immunity. Maguire Oil, 69 S.W.3d at 364. The Texarkana Court of
Appeals cited cases in which cities were estopped from taking some action, such as
enforcing zoning ordinances, to support its holding that summary judgment based on
sovereign immunity was inappropriate on Maguire Oil’s negligent misrepresentation
and promissory estoppel claims.


 Maguire Oil did not address whether a
governmental entity could be estopped from asserting immunity to suit in a plea to
the jurisdiction.
          Furthermore, a governmental entity cannot be estopped from asserting a lack
of jurisdiction. Tourneau Houston, Inc. v. Harris County Appraisal Dist., 24 S.W.3d
907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (“No one is ever estopped
from asserting lack of subject-matter jurisdiction.”); see also Jonah Water Special
Util. Dist. v. White, No. 03-06-00626-CV, 2009 WL 2837649, at *4 (Tex.
App.—Austin 2009, no pet.) (mem. op.) (citing Tooke, 197 S.W.3d at 332 (noting that
courts “defer to the Legislature to waive immunity from contract claims”)).
          However, we can construe the Chemams’ arguments as a claim that the City’s
conduct constituted an equitable waiver of immunity.


 This Court has held that a
governmental entity may waive immunity by its conduct. Texas Southern University
v. State St. Bank & Trust Co., 212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007,
pet. denied). There, TSU, a governmental entity, contracted with a company to lease
heavy equipment. Id. at 897. TSU’s general counsel assured the leasing company in
writing that the contract was binding against the University and that the company
could collect on a judgment against the University if the need arose. Id. at 898. After
the company provided approximately $13 million in equipment and services, TSU
refused to make the payments due and declared that the agreements in question were
not valid obligations. Id. We held that TSU waived immunity by its conduct, citing
the leasing company’s argument that TSU “lured” the company into the lease “with
false promises that the contract would be valid and enforceable, then disclaimed any
obligation on the contract by taking the position that the contract was not valid after
all.” Id. at 908. 
          Here, however, the City’s conduct does not constitute equitable waiver by
conduct. The City did not enter into a contract with the Chemams. See Tex. A. & M.
Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 840 (Tex. 2007) (holding that contracting
with private party and accepting benefits of contract are not enough to waive
immunity by conduct). The City did not require them to rebuild the fence—the
Chemams could have torn the old one down and waited—and the Chemams began
building the new fence before they sought a building permit from the City. The City
granted the permit after the Chemams provided plans and surveys and made
representations that their fence was located entirely on their own property. The
affidavit signed by Diann Chemam acknowledged that any false or misleading
statements would void the permit and they might be required to remove any
improvements erected pursuant to the void permit at their sole cost and expense. See
Tara Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564, 580 & n.19 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied) (holding that city did not waive
immunity when city’s attorney made handwritten and signed agreement with
plaintiffs because agreement was not binding on city until it was approved by city
counsel, plaintiffs were “charged with notice of the limits of the authority of the
City’s counsel,” and plaintiffs did not allege that they were “‘lured’ or misled in
relation to the handwritten resolution”).
          The Chemams have not pled any statute that waives the City’s immunity to suit. 
Therefore, we conclude that the trial court erred in denying the City’s plea to the
jurisdiction on the Chemams’ detrimental reliance and equitable estoppel claims.
          We sustain the City’s first and third issues.
Tort Claims
          In its fourth issue, the City argues that it is immune from liability for the
Chemams’ tort claims.


 The City argues that it is immune from liability for any of the
Chemams’ negligence claims because they did not plead that their injuries arose from
the use of a motor vehicle or motorized equipment.
          In the tort context, cases involving claims against a city begin by considering
whether the city was acting in a proprietary or governmental function. City of
Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 355 (Tex. App.—Houston
[14th Dist.] 2008, no pet.); see also Tooke, 197 S.W.3d at 343 (“The proprietary-governmental dichotomy has been used to determine a municipality’s immunity from
suit for tortious conduct.”). Governmental entities are not immune from suits for acts
taken in their proprietary capacity; however, they are immune from suit for torts
committed in the performance of their governmental functions, unless immunity is
waived by the Tort Claims Act. Tooke, 197 S.W.3d at 343 (citing City of Tyler v.
Likes, 962 S.W.2d 489, 501 (Tex. 1997) and Dilley v. City of Houston, 222 S.W.2d
992, 993–94 (Tex. 1949)). Street construction and design is classified as a
governmental function for which a municipality is immune from suit except where
immunity has been waived under the Texas Tort Claims Act. Tex. Civ. Prac. &
Rem. Code Ann. § 101.0215(a)(3); see also id. § 101.021. Likewise, the issuance
and denial of permits is classified as a governmental function. See Teague, 570
S.W.2d at 393.
          The Texas Tort Claims Act waives sovereign immunity for:
          (1)     property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an employee
acting within his scope of employment if:
 
                    (A)    the property damage, personal injury or death arises from
the operation or use of a motor-driven vehicle or
motor-driven equipment; and
 
                    (B)    the employee would be personally liable to the claimant
according to Texas law; and
 
          (2)     personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would,
were it a private person, be liable to the claimant according to
Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021. The trial court can have subject
matter jurisdiction over the Chemams’ negligence claims only if the City’s sovereign
immunity is waived by subsection (1) of section 101.021. See id. § 101.021(1)–(2).
          Here, the Chemams pled negligence causes of action alleging that the City
breached its “duty to deal fairly with its citizens’ . . . valuable property rights” and its
duty “to coordinate actions between its various departments so as to serve and benefit
all its citizens and to not take advantage of its powers of law enforcement and
superior knowledge of its plans.” Neither of these negligence claims asserts a cause
for property damage caused by a motor vehicle. Therefore the Chemams’ negligence
claims do not fall within the waiver provided by the Tort Claims Act. See id.
          We conclude that the trial court erred in denying the City’s plea to the
jurisdiction on the Chemams’ tort claims.
          We sustain the City’s fourth issue.
Declaratory Judgment Act Claim
          In its sixth issue, the City argues that the Chemams failed to establish the trial
court’s jurisdiction under the Uniform Declaratory Judgments Act (“UDJA”) because
their allegations duplicate pending claims and fail to arise under a deed, will, or
written contract and because the Chemams are seeking damages. In its seventh issue,
the City argues that the trial court does not have jurisdiction to award attorney’s fees
under the UDJA when no UDJA cause is properly alleged.
The UDJA states:
A person interested under a deed, will, written contract, or other writings
constituting a contract or whose rights, status, or other legal relations are
affected by a statute, municipal ordinance, contract, or franchise may
have determined any question of construction or validity arising under
the instrument, statute, ordinance, contract, or franchise and obtain a
declaration of rights, status, or other legal relations thereunder.
 
Id. § 37.004(b). A party can maintain a suit against a governmental unit to obtain an
equitable remedy or determine its legal rights without legislative permission. 
Freedman v. Univ. of Houston, 110 S.W.3d 504, 508 (Tex. App.Houston [1st Dist.]
2003, no pet.). However, “[t]he [UDJA] does not extend a trial court’s jurisdiction,
and a litigant’s request for declaratory relief does not confer jurisdiction on a court
or change a suit’s underlying nature.” IT-Davy, 74 S.W.3d at 855. 
          In Freedman, we observed that the Texas Supreme Court has “consistently held
that private parties may not circumvent a governmental unit’s immunity from suit by
characterizing a suit for money damages as a declaratory judgment claim.” Id.; see
IT-Davy, 74 S.W.3d at 855. We further held in Freedman that parties may not “recast
their . . . claims . . . as equitable claims to avoid the requirement of legislative consent
to suit.” Freedman, 110 S.W.3d at 508. 
          Here, the Chemams asked the trial court to determine their rights “under the
Texas Constitution and any other applicable statutes” regarding the City’s order that
the wall be removed without just compensation. However, the trial court does not
have jurisdiction to consider the Chemams’ arguments under the takings clause, as
we discuss below.


 Because the UDJA does not itself confer jurisdiction or change
a suit’s underlying nature, the trial court does not have jurisdiction to consider this
claim or any claim for attorney’s fees arising under it. See IT-Davy, 74 S.W.3d at
855.
          We conclude that the trial court erred in denying the City’s plea to the
jurisdiction on the Chemams’ claims under the UDJA.
          We sustain the City’s sixth and seventh issues.
Selective Enforcement Claim
          In its second issue, the City argues that it retains its immunity from suits
seeking damages for constitutional torts like the Chemams’ selective enforcement
claim. In their second amended petition to the trial court, the Chemams supported
their detrimental reliance claim with a sentence alleging that the City engaged in
“selective enforcement.” The Chemams responded that their claims for selective
enforcement were within the jurisdiction of the trial court because they were not
solely seeking monetary damages, but were also seeking “such other and further relief
[which] they may show themselves justly entitled to receive.”



          Selective enforcement is considered a constitutional claim. See Miller v. State,
874 S.W.2d 908, 915 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). To establish
a selective enforcement claim, a plaintiff must show that he has been singled out for
prosecution while others similarly situated and committing the same acts have not. 
Combs v. STP Nuclear Operating Co., 239 S.W.3d 264, 275 (Tex. App.—Austin
2007, pet. denied); see also Long v. Tanner, 170 S.W.3d 752, 754–55 (Tex.
App.—Waco 2005, pet. denied) (“To successfully bring a selective prosecution or
enforcement claim, a plaintiff must prove that the government official’s acts were
motivated by improper considerations, such as race, religion, or the desire to prevent
the exercise of a constitutional right.”) (quoting Beeler v. Rounsavall, 328 F.3d 813,
817 (5th Cir.), cert. denied, 540 U.S. 1048, 124 S. Ct. 820 (2003).
          Suits for damages against governmental entities for constitutional violations
are barred by governmental immunity. See City of Beaumont v. Bouillion, 896
S.W.2d 143, 147 (Tex. 1995) (holding that no private cause of action for money
damages exists against governmental entity for alleged violations of constitutional
rights). However, suits seeking equitable remedies for constitutional violations are
not barred by governmental immunity. See id. at 149.
          In their second amended petition to the trial court, the Chemams “allege[d] a
selective enforcement claim against [the City] in which [the Chemams] have been
intentionally and knowingly treated differently than similarly situated citizens which
additionally confirms their justified detrimental reliance upon the actions of the
[City].” The Chemams prayed to be awarded “damages, a declaration of their rights
under Texas law, . . . and for such relief both general and equitable as [they] may
show themselves to be justly entitled to receive.” To the extent that the Chemams are
seeking monetary damages from the City for selective enforcement, their claims are
barred by governmental immunity. Id. at 147. 
          We conclude that the trial court erred in denying the City’s plea to the
jurisdiction as it relates to the Chemams’ suit for damages on the selective
enforcement claim.
          We sustain the City’s second issue.
Takings Claim
          In its fifth issue, the City argues that the trial court did not have jurisdiction
over the Chemams’ takings claim.
          The takings clause of the Texas Constitution mandates that “[n]o person’s
property shall be taken, damaged or destroyed for or applied to public use without
adequate compensation being made, unless by the consent of such person.” Tex.
Const. art. I, § 17. Condemnation is the procedure by which the sovereign exercises
its right to take property of a private owner for public use, without consent, upon the
payment of just compensation. Villareal v. Harris County, 226 S.W.3d 537, 542
(Tex. App.Houston [1st Dist.] 2006, no pet.). Inverse condemnation occurs when
a property owner seeks compensation for property taken for public use without
process or a proper condemnation proceeding. City of Houston v. Boyle, 148 S.W.3d
171, 178 (Tex. App.—Houston [1st Dist.] 2004, no pet.).
          The Texas Government Code provides, “A county civil court at law has
exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory
and inverse, regardless of the amount in controversy.” Tex. Gov’t Code Ann.
§ 25.1032(c) (Vernon 2004); see Boyle, 148 S.W.3d at 177–78 (holding that “Harris
County Civil Courts at Law have exclusive jurisdiction over article 1, section 17
claims”).
          The district court does not have jurisdiction over this inverse condemnation
claim because the Texas Government Code states that county civil courts at law have
exclusive jurisdiction over this type of claim. See Tex. Gov’t Code Ann.
§ 25.1032(c); Boyle, 148 S.W.3d at 177–78.
          We conclude that the trial court erred in denying the City’s plea to the
jurisdiction on this cause of action.
          We sustain the City’s fifth issue.
Conclusion

          We reverse the order of the trial court denying the City’s plea to the
jurisdiction. We render judgment dismissing the Chemams’ detrimental reliance,
estoppel, tort, UDJA, and selective enforcement claims for lack of subject matter
jurisdiction. We dismiss the case without prejudice to the Chemams’ bringing their
inverse condemnation claim in a court of appropriate jurisdiction.




                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Keyes, Alcala, and Hanks.